IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CHERYL LUCKEY, an individual, and CHRISTINE COLE, an individual, on their own behalves and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>ALSIDE, INC., d/b/a ALSIDE WINDOWS & DOORS d/b/a ALSIDE, a Delaware corporation, and ASSOCIATED MATERIALS, LLC, d/b/a ALSIDE WINDOWS & DOORS d/b/a ALSIDE, a Delaware limited liability company, and ASSOCIATED MATERIALS INCORPORATED, d/b/a ALSIDE WINDOWS & DOORS d/b/a ALSIDE, a Delaware corporation,<br><br>　　　　　　　　　　Defendants. | Case No. _____<br>[Class Action]<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

_____

Plaintiffs, Ms. Cheryl Luckey ("Luckey") and Ms. Christine Cole ("Cole") (collectively hereinafter "Plaintiffs"), on their own behalves and on behalf of all others similarly situated ("the Class"), by and through their attorneys, Benson, Kerrane, Storz & Nelson, P.C., hereby demand a jury trial, and allege as follows:

**INTRODUCTION**

1.　　This lawsuit arises out of the design, manufacture, sale, distribution, and warranty service on certain two-pane glass windows by Defendants. Plaintiffs are both homeowners that own homes containing windows manufactured and sold by Defendants. Plaintiffs have each suffered from condensation and/or corrosion between the panes of glass in multiple windows. In

1

addition to the property damage caused to the windows themselves, Plaintiffs have suffered inconvenience, aggravation, loss of use of their windows, other noneconomic damages, and/or economic damages as a result of the condensation and corrosion that obscures the windows, and the inadequate warranties and warranty service provided by Defendants.

2.     Upon information and belief, the windows at issue in this lawsuit contain certain design, manufacturing, and/or workmanship defects and deficiencies that make them highly susceptible to seal failure and other mechanisms of condensation and corrosion, at higher failure rates than would be expected by a typical and reasonable consumer, and at higher failure rates than are typical for the glass window manufacturing industry.  Upon information and belief, Defendants knew, or should have known, about the defects and deficiencies in their windows prior to the time that they were sold.

3.     Plaintiffs allege that the "limited warranties" issued by Defendants to purchasers of their windows violate state and federal law, fail to fully or validly disclaim state law implied warranties, and are void, voidable, unenforceable, and/or unconscionable.

4.     Plaintiffs bring this lawsuit not only on their own behalves, but also on the behalves of all others similarly situated. Upon information and belief, Defendants have sold tens-of-thousands (if not more) defective windows throughout virtually every state in the United States.

## PARTIES

*Plaintiffs:*

5.     Ms. Cheryl Luckey is an individual that resides in a townhome located at 14653 Rhinestone Way, Ramsey, MN 55303 (the "Luckey Home").  Luckey owns the Luckey Home,

and is the first owner of that home. She occupies it as her primary residence. Luckey is more than 18 years of age.

7.      Mr. Christine Cole is an individual that resides in a single family home located 4 Flint Drive, Amherst, New Hampshire 03031 (the "Cole Home"). Cole owns the Cole Home, and occupies it as her primary residence. Cole is more than 18 years of age.

*Defendants:*

7.      Upon information and belief, Defendant Alside Inc. d/b/a Alside Windows & Doors d/b/a Alside ("Alside, Inc.") is a Delaware corporation that has its principal place of business located at 3773 State Road, Cuyahoga Falls, OH 44223. Alside, Inc. is in the business of designing, manufacturing, distributing, and selling homebuilding products, including but not limited to windows, doors, gutters, downspouts, insulation, and siding. Alside, Inc. sells and distributes its products throughout the United States, including in Minnesota, New Hampshire, and Ohio.

8.      Upon information and belief, Defendant Associated Materials, LLC  d/b/a Alside Windows & Doors d/b/a Alside ("AM, LLC") is a Delaware limited liability company that has its principal place of business located at 3773 State Road, Cuyahoga Falls, OH 44223. AM, LLC is in the business of designing, manufacturing, distributing, and selling homebuilding products, including but not limited to windows, doors, gutters, downspouts, insulation, and siding. AM, LLC sells and distributes its products throughout the United States, including in Minnesota, New Hampshire, and Ohio.

9.      Upon information and belief, Defendant Associated Materials, Incorporated  d/b/a Alside Windows & Doors d/b/a Alside ("AM, Inc.") is a Delaware limited liability company that

has its principal place of business located at 3773 State Road, Cuyahoga Falls, OH 44223. AM, Inc. is in the business of designing, manufacturing, distributing, and selling homebuilding products, including but not limited to windows, doors, gutters, downspouts, insulation, and siding. AM, Inc. sells and distributes its products throughout the United States, including in Minnesota, New Hampshire, and Ohio.

10.     Alside, Inc., AM, LLC, and AM, Inc. are hereinafter collectively referred to as "Alside."

11.     On information and belief, Alside, Inc., AM, LLC, and AM, Inc. are jointly and/or severally liable to the Plaintiffs and putative Class members as joint venturers, or in the alternative, operate such that any pretend corporate formalities amongst and between the two should be disregarded or pierced, or in the alternative, are subject to an agency relationship, or in the alternative, are subject to predecessor and successor liability theories, or in the alternative, are otherwise jointly and severally liable for all acts and omissions alleged herein.

12.     Plaintiffs are informed and believe, and based thereon allege that at all times herein mentioned each of the Defendants was the agent, servant, successor, assign, joint venturer, partner, and/or employee of the other Defendants, and in doing the things herein alleged, was acting in the scope of his or her authority, and with the permission and consent of his or her co-Defendants.

13.     Plaintiffs are informed and believe, and based thereon allege that the Defendants acted in a common scheme or plan that resulted in injuries alleged herein.

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and many other class members are citizens of a different state than Defendants.

15.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, and some of the actions giving rise to the Complaint took place in this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants, as corporate entities, are deemed to reside in any judicial district in which they are subject to personal jurisdiction. Additionally, Defendants transact business within this District, and some of the events establishing the claims arose in this District.

17.     Upon information and belief, this is the first Complaint, as well as the first Complaint in class action on the factual and legal matters presented herein.

## FACTUAL ALLEGATIONS

*Alside's Deficient and Defective Two-Pane Window IGUs*

18.     This lawsuit presents class action allegations relating to certain deficient and defective components of two-pane windows designed, manufactured, distributed, and sold by Alside.

19.     For more than 65 years, Alside and its predecessors in interest have designed, manufactured, and sold glass windows. Those windows have been primarily installed in residential homes, as well as in light commercial properties. Alside sells windows for new

construction as well as replacement windows for existing structures.  Alside currently sells more than fifteen different lines of window products. Alside sells its windows in fixed "picture" window configurations, single hung, double hung, sliding, and casement windows, as well as sliding patio doors. Upon information and belief, Alside windows are sold in 48 of the United States, excluding only Alaska and Hawaii.

20.     Upon information and belief, the vast majority, if not all of Alside's current and historical product lines make use of the same, or substantially the same insulated glass unit ("IGU"). An IGU is the two-pane sandwich of glass that is held and housed inside the window frame. The IGU at issue in this lawsuit is composed of two panes of glass separated by a PPG Intercept® Warm-Edge Spacer System" between the panes of glass. The IGU contains one or more low emissivity metallic films on the inside of the pane(s) of glass, as well as inert argon gas between the panes. The IGU makes use of a single seal to keep air from passing in or out of the glass assembly. This type and configuration of IGU is hereinafter referred to as the "Alside Two-Pane IGU". The Alside Two-Pane IGU is often, but not always called "ClimaTech High-Performance Insulated Glass" by Alside.

21.     Upon information and belief, at various relevant times, Alside has incorporated the Alside Two-Pane IGU into the following non-exclusive list of window products:  Sheffield, UltraMaxx, Mezzo East Coast, Fusion, Model 0700, Sheffield II, Mezzo West Coast, Exclibur II, Fairfield 80 Series, Fairfield 70 Series, Performance Series, Performance Series Gold/Silver, and others.

22.     Reports indicate that Alside Two-Pane IGUs incur condensation and/or corrosion of the low-e metallic films between the two panes of glass in unacceptably high numbers and at

6

unacceptably early timeframes in the life of the products.  Many Alside Two-Pane IGUs that have not yet actually failed are subject to premature failure due to the design and manufacturing defects inherent in them, and at higher than expected rates for two pane windows in the United States.

23.     Plaintiffs allege the Alside Two-Pane IGUs contain multiple discrete design and manufacturing defects and deficiencies. The following non-exclusive list of defects and deficiencies are alleged to exist in all Alside Two-Pane IGUs:

23.1.  Lack of edge deletion on the "low-e" metallic films on the window panes;

23.2.  Lack of desiccant, or inadequate desiccant inside the window pane spacer;

23.3.  Edge seal defects and failures;

23.4.  Lack of secondary window seal;

23.5.  Improperly high frost point between the panes of glass; and

23.6.  Improper or inadequate glass preparation leading to visible "roller marks" in the condensation and corrosion patterns of the windows.

*Inadequate Testing*

24.     Upon information and belief, Alside did not adequately test its Alside Two-Pane IGUs in their anticipated environments, or for sufficient durations before selling them to the public.

25.     Upon information and belief, Alside performed inadequate testing, quality control, and research and development on the Alside Two-Pane IGUs prior to selling them to the public.

26.     Upon information and belief, Alside "value engineered" Alside Two-Pane IGUs in ways that have led them to fail prematurely and at unexpectedly high rates. Also upon information and belief, Alside failed to investigate or test other methods of construction for the Alside Two-Pane IGUs that would have given them greater durability and reliability, which would have made them less susceptible to condensation or corrosion problems, and which would have made the Alside Two-Pane IGUs' construction more in line with the accepted industry standards and/or minimums.

***Failure to Warn***

27.     Upon information and belief, Alside was aware (or should have been aware) that problems, defects, and deficiencies existed with its Alside Two-Pane IGUs, but failed to notify, warn, or in any way communicate those deficiencies to product owners, potential product owners, distributors, or its own sales force. Upon information and belief, those known, yet undisclosed defects and deficiencies include the rapid and excessive failure rate of the Alside Two-Pane IGUs including but not necessarily limited to formation of condensation and/or corrosion between the glass panes.

28.     Also upon information and belief, Alside has received an abnormally large number of warranty claims from owners of Alside Two-Pane IGUs. To the extent that Alside did not have prior, actual knowledge of its products' defects and deficiencies, the excessive number and rate of warranty requests put Alside on constructive or actual notice of its defective and deficient products. Nonetheless, Alside continued to fail to disclose to, or warn its product owners, potential product owners, distributors, or its own sales force of the known problems.

29.     Upon information and belief, Alside has never recalled the Alside Two-Pane IGUs.

30.     Upon information and belief, Alside continues to manufacture and sell the Alside Two-Pane IGUs in its known defective design.

31.     Upon information when Alside provides replacement Alside Two-Pane IGUs to customers with failed Alside Two-Pane IGUs (under warranty or otherwise), it does so with similarly defective and deficient Alside Two-Pane IGUs. Many owners of Alside Two-Pane IGUs, including Plaintiff Cole, have had replacement Alside Two-Pane IGUs fail for a second time (or more) in the same window frame.

*Alside's Sales and Promotional Misrepresentations*

32.     Alside promotes on its website and in print to customers and prospective customers nationwide that "[f]or more than 65 years, Alside has provided exceptional building products for homes and businesses throughout the country. Our commitment to innovative design, advanced technology, superior craftsmanship and outstanding customer service has defined our legacy as a true industry leader."

33.     Alside promotes and markets windows containing its Alside Two-Pane IGUs as "[featuring] a beveled, double-wall design for increased strength," as having "[o]utstanding thermal efficiency and superior long-term performance," and as "[f]unctional and visually appealing".

34.     Alside reports and advertises that all of its windows, including those with Alside Two-Pane IGUs "[utilize] performance levels beyond AAMA, ASTM and NFRC standards, Alside Windows are tested for air, water, structural load, thermal performance and forced entry

9

resistance. Our windows are approved under AAMA and NFRC certification programs," and that "Alside partners with objective, third-party organizations that continuously test our product and verify that we meet the highest standards of performance, quality, value and safety."

35.     Alside contends that "[The Insulating Glass Certification Council (IGCC)] sponsors and directs an independent, true third-party certification program. Periodic accelerated laboratory tests, per American Society for Testing and Materials (ASTM) specifications, and unannounced plant quality audits and inspections assure the quality and performance of sealed insulation glass products."

36.     Certain Alside windows containing Alside Two-Pane IGUs are billed by Alside as being "[t]he ultimate choice for maximum beauty, strength and energy savings," and as "tough, durable and other than an occasional washing, require minimal maintenance."

37.     The PPG Intercept Warm-Edge Spacer System is sold by Alside to "maximize thermal efficiency and the life of the insulated glass unit."

38.     Alside advertises that its "Alside Windows are precision-engineered to provide years of excellent service and energy savings."

39.     Alside contends that "[certain windows containing Alside Two-Pane IGUs] exceed the performance requirements set forth by the U.S. Department of Energy in conjunction with the National Fenestration Rating Council (NFRC) test criteria."

40.     ClimaTech branded Alside Two-Pane IGUs are marketed as "your solution for increased windows performance."

41.     The representations recited herein have been made by Alside over the course of many years in its product sales literature. Upon information and belief, that sales literature has

been disseminated through the lower 48 United States by means of Alside's website, as well as in paper form through its sales force, distributors and installers. Alside employs (or has employed at certain relevant times) door-to-door sales tactics for its replacement window lines. Alside has also disseminated its sales and promotional literature via U.S. Mail.

***Alside's Warranties***

42. Alside issues a "limited warranty" with every window sold that contains an Alside Two-Pane IGU. The warranties vary slightly between sales territories, and as between windows intended for new construction versus replacement windows. However, the core terms of the limited warranties are the same.

43. In Alside's sales literature, the warranties are billed as "[y]our absolute guarantee of quality . . . the Alside Lifetime Limited Warranty."

44. In Alside's "Lifetime Limited Warranty," given on most of its windows product lines, Alside warrants the Alside Two-Pane IGUs specifically:

> Lifetime Limited Warranty - Insulating Glass Unit. The hermetically sealed insulated glass unit of the Alside Vinyl Window/Patio Door System is warranted for as long as the Original Property Owner shall own and live in the property from date of window installation against development of material obstruction of vision occurring from manufacturing defects resulting from film formation or dust collection between the interior glass surfaces, caused by failure of the hermetic seal, under conditions of normal use and service.

45. However, Alside attempts to convince its customers that condensation on or between window panes is a normal occurrence:

> Condensation on windows may occur as the natural result of humidity within the house or building area and changes in interior/exterior temperatures, and does not indicate a defect in the window. This Warranty does not cover condensation nor frost or freezing from condensation on the windows and patio doors.

46.     Alside agrees to warrant the Alside Two-Pane IGU, but refuses to pay for shipping or delivery costs, or labor expenses to install any replacement IGUs:

> During the one (1) year period from date of window installation, the Manufacturer will provide the labor at no charge to the Original Purchaser-Present Property Owner for repair or replacement of the warranted window part or component, under the provisions of this Limited Warranty. Except as to labor on repair or replacement for one (1) year on warranted work following date of window installation, this Limited Warranty does not include any additional labor costs and the Manufacturer will not be responsible after the first year for any costs incurred in the removal or replacement, installation or reinstallation of the window or any part or component of the window, or of any repaired or replacement part or component furnished by Manufacturer under this Warranty for the window.

47.     Alside only gives "full" warranty coverage to newer IGUs, but will only pay for a percentage of the replacement cost of a failed, older IGU, thereby giving itself and its preferred contractors and distributors an annuity stream of income on older Alside Two-Pane IGUs that are expected to fail:

> In the event that the Lifetime Limited Warranty is transferred to a subsequent owner of the property containing Alside windows or patio doors, or in the event of hermetic seal failure, "the subsequent owner will be responsible for charges based on the following schedule:
>
> | | |
> |---|---|
> | 0 – 10 years | No Charge |
> | 11 – 15 years | 50% |
> | 16 - 20 years | 70% |
> | 21 – 25 years | 80% |
> | 25+ years | 90% |

48.     Alside also attempts to disclaim all standard state law implied warranties:

> THE WARRANTY STATEMENTS CONTAINED IN THIS LIMITED WARRANTY SET FORTH THE ONLY EXPRESS WARRANTIES EXTENDED BY ALSIDE FOR THE WINDOWS, IN LIEU OF ALL OTHER WARRANTIES, AND THE PROVISIONS OF THIS WARRANTY SHALL CONSTITUTE THE ENTIRE LIABILITY OF ALSIDE AND THE PROPERTY

OWNER'S EXCLUSIVE REMEDY FOR BREACH OF THIS WARRANTY. ALSIDE SHALL NOT BE LIABLE TO THE PROPERTY OWNER FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR BREACH OF ANY EXPRESS OR IMPLIED WARRANTY ON THE WINDOWS.

49.     Alside's "Limited Warranty Assurance" given on Performance Series windows

for new construction is substantially the same language and purported coverage:

Insulated Glass Unit. The hermetically sealed insulated glass unit of the PERFORMANCE SERIES Vinyl Window/Patio Door System is warranted for a period of Twenty (20) Years from the date of window installation against development of material obstruction of vision occurring from manufacturing defects resulting from film formation or dust collection between the interior glass surfaces, caused by failure of the hermetic seal, under conditions of normal use and service.

***

Condensation on windows or patio doors may occur as the natural result of humidity within the house or building area and changes in interior/exterior temperatures, and does not indicate a defect in the window or patio door. This Warranty does not cover condensation nor frost or freezing from condensation on the windows and patio doors.

***

This Limited Warranty does not include labor cost and the Manufacturer will not be responsible for any costs incurred in the removal or replacement, installation or reinstallation of the window or of any part or component of the window/patio door, or of any repaired or replacement part or component furnished by Manufacturer under this Warranty for the window/patio door.

***

THE WARRANTY STATEMENTS CONTAINED IN THIS LIMITED WARRANTY SET FORTH THE EXPRESS WARRANTIES EXTENDED BY ALSIDE AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED. THE PROVISIONS OF THIS WARRANTY SHALL CONSTITUTE THE ENTIRE LIABILITY OF ALSIDE AND SHALL BE THE PROPERTY OWNERS EXCLUSIVE REMEDY FOR BREACH OF THIS WARRANTY. ALSIDE SHALL NOT BE LIABLE TO THE PROPERTY OWNER FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND FOR BREACH OF ANY EXPRESS OR IMPLIED WARRANTY

13

50.     The warranties given by Alside on its new construction windows are more restrictive than those given on replacement windows because the warranties are not transferrable to subsequent owners of a home, giving them no warranty protection against the defective Alside Two-Pane IGUs whatsoever:

> This Limited Warranty shall be for the benefit of the original Purchaser/Property Owner only, [and] shall not be transferable.

### *Plaintiff Luckey Allegations*

51.     The Luckey Home was constructed in approximately 2006. Upon information and belief, all of the windows contained in the Luckey Home were designed, manufactured, distributed, and sold by Alside. The windows in the Luckey Home are Alside "A0100 'Performance Series' windows." (hereinafter "A0100 Windows"). Luckey's A0100 Windows contain Alside Two-Pane IGUs.

52.     Luckey had no direct dealings or direct contractual privity with Alside relative to her purchase of the Luckey Home, or its construction. Her windows were purchased on her behalf by the developer, general contractor, and/or some subcontractor that built the Luckey Home. However, upon information and belief, Luckey is beneficiary of Limited Warranty Assurance from Alside.

53.     At some point in time after her purchase of the Luckey Home, Luckey noticed one IGU with condensation and/or corrosion between the panes of glass. The damage to her real property caused inconvenience, aggravation, and some loss of use of the damaged window.

54.     Luckey submitted a warranty claim to Alside for her damaged IGU on or about October, 2014.  On or about November, 2014, a replacement IGU was provided by Alside to

Luckey under the terms of the applicable limited warranty. Alside did not, however, pay for either the removal of the damaged IGU from the Luckey Home, or for installation of the new IGU. Lucked paid a contractor to remove and replace the damaged IGU.

55.     Some time after November, 2014, Luckey noticed a second damaged Alside Two-Pane IGU in the Luckey Home. That damaged window has condensation and/or corrosion between the two panes of glass.   The damage to her real property caused inconvenience, aggravation, and some loss of use of the damaged window.

56.     On or about February 9, 2015, Luckey (through her attorneys) submitted a warranty claim to Alside for the second damaged IGU.   As part of its handling of the warranty claim, Alside requested an inspection of the Luckey Home to view the damaged window, and notified Luckey by letter of March 17, 2015 that "Our warranty provides for either repair or replacement of the defective part of component. The warranty does not include 'cost incurred in the removal or replacement, installation or reinstallation of the window or any part or component'". In response to the Alside letter, Luckey withdrew her warranty request with the understanding that Alside was refusing for a second time to make her whole by compensating her for all of her direct and consequential damages suffered.   Ms. Lucked has paid (or will pay in the very near future) a contractor to remove and replace her second damaged IGU at her own expense.

57.     The Luckey Home is contained in a subdivision known as Symphony at Town Center in Ramsey, Minnesota ("Symphony"). That subdivision contains 88 townhomes located in 14 different buildings. Upon information and belief, all townhomes in Symphony contain exclusively A0100 windows. Based on information presently available to Plaintiffs, no less than

40 of the 88 townhomes in Symphony contain at least one A0100 Window with condensation and/or corrosion between the panes of glass, and many units have multiple A0100 Windows with that type of visible damage to them.

***Plaintiff Cole Allegations***

58.     The Cole Home also contains windows that were designed, manufactured, distributed, and sold by Alisde.  On or about January 22, 2002, Cole purchased a full set of replacement Alside windows for her home. Those windows were installed shortly thereafter. Upon information and belief, the Cole Home contains Alside windows with Climatech Alside Two-Pane IGUs.

59.     Cole received a Lifetime Limited Warranty from Alside on her windows and her Alside Two-Pane IGUs.

60.     In approximately February, 2004, the first of many IGUs failed, exhibiting condensation and/or corrosion between the two panes of glass.  The damage to her real property caused inconvenience, aggravation, and some loss of use of the damaged window. Cole submitted a warranty claim to Alside, and was given a replacement IGU by Alside in response. Ms. Cole installed the replacement IGU herself, thereby avoiding labor charges for same (in retrospect, mitigating her damages).

61.     On or about March, 2007, Cole submitted another warranty claim to Alside for three (3) additional failed Alside Two-Pane IGUs. Again Alside provided the replacement Alside Two-Pane IGUs and Ms. Cole installed them herself.

62.     On or about March 2008, Cole submitted another warranty claim for one (1) failed Alside Two-Pane IGU. This failed IGU was a replacement IGU that had failed in the same

window for a second time, demonstrating Alside's pattern and practice of replacing damaged, failed, and defective Alside Two-Pane IGUs with similarly defective products. Alside provided yet another replacement IGU, and Ms. Cole installed it herself.

63. On or about March, 2009 Cole submitted another warranty claim to Alside for two (2) failed Alside Two-Pane IGUs that exhibited corrosion and/or condensation between the panes of glass. Again Alside provided Cole with a new IGU, and Cole installed it herself.

64. On or about July 2010, Cole submitted her fifth (5th) warranty claim for one (1) more failed Alside Two-Pane IGU. Alside provided Cole with a replacement IGU, and again Cole installed it herself avoiding the typical labor costs of same. This failed Alside Two-Pane IGU was a previously-replaced IGU that had failed for the second time in the same window.

65. The repeated, continual, and almost constant damage to her real property caused inconvenience, aggravation, and some loss of use of the damaged windows. Up through some July, 2010, Alside always provided Cole with new Alside Two-Pane IGUs under warranty to replace those that had failed. Every time, however, Alside refused to install the IGUs for Cole, and refused to pay to have them installed by an experienced window contractor.

66. On or about March, 2012, Cole submitted her sixth (6th) and final warranty claim to Alside for three (3) more failed Alside Two-Pane IGUs. Alside stated to Cole that it was willing to provide replacement Alside Two-Pane IGUs to Cole under her Lifetime Limited Warranty, but only if Cole was willing to pay 50% of the cost of the new Alside Two-Pane IGUs pursuant to the stated terms of the warranty since her windows were now more than 10 years old.

67. At some time after Alside's response to the March, 2012 warranty claim Cole realized the unfairness and unconscionability of the Alside "lifetime" limited warranty.

68.     On June 10, 2012, Cole wrote a "letter of discontent" to Alside complaining about the quality of the Alside windows she had purchased, the Alside Two-Pane IGUs, as well as the quality of the warranty service that she was now receiving under her "Lifetime Limited Warranty".

69.     Cole's Alside Two-Pane IGUs continue to fail on a regular basis, including six (6) more IGUs since June, 2012. As of the date of this Complaint, Cole has nine (9) failed, unrepaired Alside Two-Pane IGUs in the Cole Home that have visible condensation and/or corrosion between the panes of glass.  The damage to her real property caused inconvenience, aggravation, and some loss of use of the damaged window.

70.     All-told, a shocking 17 Alside Two-Pane IGUs have failed in the Cole Home since the first failure in 2004.

## CHOICE OF LAW ALLEGATIONS

71.     Alside is headquartered in Ohio, the "center of gravity" of this case. Alside does substantial business in Ohio. Two of Alside's seven manufacturing plants are located in Ohio, as are a significant percentage of its employees.  Upon information and belief, Alside's personnel responsible for customer communications are and were located at the Ohio headquarters, and the design of the Alside Two-Pane Windows was done in Ohio. Also upon information and belief, Alside's product sales and marketing literature were prepared in Ohio, and direction of Alside's website content also takes place in Ohio.  Upon information and belief, Alside's presence is more substantial in Ohio than any other state.

72.     Plaintiff Luckey resides in Minnesota. Ms. Luckey's defective and deficient Alside Two-Pane IGUs were damaged in, and are currently located in Minnesota.  The other

homeowners at Symphony known to own defective and deficient Alside Two-Pane IGUs are also in Minnesota. Alside does substantial business in Minnesota, including distributing and selling most, if not all of it products in the state.

73.     Plaintiff Cole resides in New Hampshire. Ms. Cole's defective and deficient Alside Two-Pane IGUs were damaged in, and are currently located in New Hampshire. Alside does substantial business in New Hampshire, including distributing and selling most, if not all of it products in the state.

74.     At this early stage of litigation, the exact size, scope and geography of the alleged class of victims is not precisely known. Therefore, Plaintiffs reserve the right to amend this section, "Choice of Law Allegations" upon substantial progress of case discovery.

## CLASS ACTION ALLEGATIONS

75.     As alleged throughout this Complaint, the Class's claims all derive from a single course of conduct by Alside, namely the design, manufacture, distribution, sale, and warranty service of Alside Two-Pane IGUs in Minnesota, New Hampshire, Ohio, and throughout the lower 48 states of the United States (or the more precise and exact to-be-determined actual distribution territory of the Alside Two-Pane IGUs).  This case is about the responsibility of Alside, in law and in equity, for its knowledge, its conduct, and its products. Alside has engaged in uniform and standardized conduct toward the Class.  The objective facts and legal standards relevant to determining the rights of all Class members are the substantially the same.

**Nationwide Class**

76.     Accordingly, under F.R.C.P. Rules 23(a), (b)(1) and/or (b)(2) and (b)(3), Plaintiffs bring this action and seek to certify and maintain it as a class action on behalf of themselves and all others similarly situated in the United States, initially defined as follows:

> All persons (including both natural persons and legal entities) in certain, but not all states in the United States who presently own or have owned real property containing Alside Two-Pane IGUs.

(the "Nationwide Class").

**Minnesota Class**

77.     In the alternative, Luckey brings this action and seeks to certify and maintain it as a class action on behalf of herself and all others similarly situated in the State of Minnesota, initially defined as follows:

> All persons (including both natural persons and legal entities) in the State of Minnesota who presently own or have owned real property containing Alside Two-Pane IGUs.

(the "Minnesota Class").

**New Hampshire Class**

78.     Also in the alternative, Cole brings this action and seeks to certify and maintain it as a class action on behalf of herself and all others similarly situated in the State of New Hampshire, initially defined as follows:

> All persons (including both natural persons and legal entities) in the State of New Hampshire who presently own or have owned real property containing Alside Two-Pane IGUs.

(the "New Hampshire Class").

79.     Excluded from the Nationwide Class, the Minnesota Class, and the New Hampshire Class (collectively the "Classes") are Alside, its employees, coconspirators, officers,

directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Alside.

80.     Also excluded from the Classes are class counsel and their employees and immediate family members, as well as the judicial officers and associated court staff assigned to this case, and their immediate family members.

81.     Further excluded from the proposed Classes are any persons or entities that have previously commenced and concluded a lawsuit for the matters presented herein.

82.     Upon information and belief, tens-of-thousands of people currently own windows or sliding doors containing Alside Two-Pane IGUs. Those people are believed to live nationwide, in most, if not all of the United States. Therefore, joinder of all such people into one lawsuit is impracticable. *See* F.R.C.P. 23(a)(1).

83.     The questions of law and fact that are germane to Plaintiffs' claims against Alside are common to the other Class members as well. The common factual questions include, but are not limited to:

83.1.   The exact same design and manufacturing defects (or substantially the same in all material respects) are alleged by Plaintiffs to exist in each one of the Alside Two-Pane IGUs designed, manufactured, and sold by Alside. *See, e.g.,* Paragraph 20, *supra*.   The Court and the Jury will be asked to ultimately determine whether or not every single Alside Two-Pane IGU designed, manufactured, and sold by Alside is or was defective.

83.2.   Whether or not Alside knew or should have known that its Alside Two-Pane IGUs were defective when sold.

83.3.   Whether or not, or to what extent, Alside adequately tested in Two-Pane IGUs prior to selling them.

83.4.   Whether or not, and to what extent Alside disclosed to its customers and potential customers that the Alside Two-Pane IGUs were defective, or warned them of the substantial, increased, and expected and known risks of their future failure.

83.5.   Whether or not, or to what extent Alside's limited warranties are fair, conscionable, enforceable, void, or voidable.

83.6.   Whether or not Alside treated its customers fairly in requiring them to pay for labor to remove and replace failed Alside Two-Pane IGUs.

83.7.   Whether or not, and to what extent the statutes of limitation were or should be tolled in equity or estoppel due to Alside's wrongful conduct in withholding information about its defective and deficient Alside Two-Pane IGUs.

84.   The same legal theories described herein below most likely apply equally to all of the Classes' members. *See* F.R.C.P. 23(a)(2) and (3), and the CLAIMS FOR RELIEF specifically recited hereinbelow.  Additionally, Alside's anticipated defenses to the defective product allegation are expected to be the same for all Class members. *See* F.R.C.P. 23(a)(3).

85.   Plaintiffs believe that they will fairly and adequately protect the interests of not only themselves, but also those of the other Class members. Plaintiffs both believe their claims and factual histories to be representative of the many other people that currently own the defective and deficient Alside Two-Pane IGUs.

86.     The undersigned and the law firm of Benson, Kerrane, Storz & Nelson, P.C. ("BKSN") are experienced trial litigators, particularly in the field of construction defects and construction product defects. *See* F.R.C.P. 23(a)(4). BKSN is a law firm that represents only plaintiffs, and is accustomed and able to advance any and all litigation costs required to vigorously prosecute this action.

87.     The prosecution of separate actions by the numerous Class members in different courts, before different judges and juries, with different attorneys, and with different expert witnesses would create a substantial risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Alside. *See* F.R.C.P. 23(b)(1)(A).

88.     Plaintiffs submit that questions of law and fact common to Plaintiffs and the other Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* F.R.C.P. 23(b)(3).

## **TOLLING OF THE STATUTES OF LIMITATION**

89.     All applicable statutes of limitation have been tolled by Alside's knowing, ongoing and active fraudulent concealment and denial of the facts alleged herein. Plaintiffs and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that the Alside Two-Pane IGUs were and are defective and deficient in so many varied and technical respects.  Nor would a reasonable and diligent investigation by a consumer have disclosed that Alside had information in its possession about the existence and severity of the defects.

90.     All applicable statutes of limitation also have been tolled by operation of the discovery rule. Specifically, Plaintiffs and the other Class members could not have discovered, through the exercise of reasonable diligence, that their defective Alside Two-Pane IGUs were defective within the time period of any applicable statutes of limitation.

91.     Instead of disclosing the myriad defects and deficiencies in the Alside Two-Pane IGUs, Alside falsely represented that its Alside Two-Pane IGUs and the windows that contained them were high quality, durable, and subject to a reasonable and even generous "lifetime" warranty.

92.     Alside has been under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the defective Alside Two-Pane IGUs. However, Alside has consistently, knowingly, affirmatively, and actively concealed the true nature, quality, and character of the defective Alside Two-Pane IGUs from consumers.

93.     Based on the foregoing, Alside is estopped from relying on any statutes of limitations in defense of this action as to claims for which the doctrine of estoppel is recognized.

94.     The Plaintiffs' filing of this original Complaint continues to toll, or tolls, all applicable statutes of limitation, making this present action timely.

## REALLEGATION AND INCORPORATION BY REFERENCE

95.     Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint as if fully set forth in each of the following Claims for Relief asserted on behalf of the Nationwide Class, the Minnesota Class, and the New Hampshire Class.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### (Negligent Product Design)

96.     Plaintiffs are informed, believe, and based thereon allege that Alside designed, or controlled the design of the Alside Two-Pane IGUs.

97.     Alside, and independent of any contract, had a legal duty to Plaintiffs, to all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them, to design the Alside Two-Pane IGUs in a non-negligent manner and free from defects.

98.     Plaintiffs are informed and believe, and based thereon allege that Alside breached said duties owed to Plaintiffs, to all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them, by negligently, carelessly, tortiously, and wrongfully failing to use reasonable care in designing the Alside Two-Pane IGUs.

99.     These breaches of duty directly and proximately caused, and are evidenced by condensation and corrosion in a significant number of the Alside Two-Pane IGUs.

100.    Additionally, these breaches of duty directly and proximately caused, and are evidenced by financial losses and damages suffered by Plaintiffs and all others similarly situated for IGU replacement labor and material costs, among other damages.

101.    Such negligent conduct of Alside has resulted in actual damages to real and/or personal property.

102.    Although Alside may not have intended or expected that its actions would cause damage, it was foreseeable that its negligence, acts, and omissions could cause damage to the

property of Plaintiffs, to all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

103.   The Alside Two-Pane IGUs fail to perform reasonably, adequately and safely in the normal, anticipated, and specified uses to which Alside intends that they be put, and are unreasonably dangerous to Plaintiffs, all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

104.   The Alside Two-Pane IGUs fail to perform reasonably, adequately, and safely in unintended but reasonably anticipated uses, and are unreasonably dangerous to Plaintiffs, all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

## SECOND CLAIM FOR RELIEF
### (Negligent Product Manufacture)

105.   Plaintiffs are informed, believe, and based thereon allege that Alside manufactured the Alside Two-Pane IGUs.

106.   Alside, and independent of any contract, had a legal duty to Plaintiffs, to all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them, to manufacture the Alside Two-Pane IGUs in a non-negligent manner and free from defects.

107.   Plaintiffs are informed and believe, and based thereon allege that Alside breached said duties owed to Plaintiffs, to all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing

them, by negligently, carelessly, tortiously, and wrongfully failing to use reasonable care in manufacturing the Alside Two-Pane IGUs.

108. These breaches of duty directly and proximately caused, and are evidenced by condensation and corrosion in a significant number of the Alside Two-Pane IGUs.

109. Additionally, these breaches of duty directly and proximately caused, and are evidenced by financial losses and damaged suffered by Plaintiffs and all others similarly situated for IGU replacement labor and material costs, among other damages.

110. Such negligent conduct of Alside has resulted in actual damages to real and/or personal property.

111. Although Alside may not have intended or expected that its actions would cause damage, it was foreseeable that its negligence, acts, and omissions could cause damage to the property of Plaintiffs, to all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

112. The Alside Two-Pane IGUs fail to perform reasonably, adequately and safely in the normal, anticipated, and specified uses to which Alside intends that they be put, and are unreasonably dangerous to Plaintiffs, all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

113. The Alside Two-Pane IGUs fail to perform reasonably, adequately and safely in unintended but reasonably anticipated uses, and are unreasonably dangerous to Plaintiffs, all others similarly situated, and to all foreseeable future purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

## THIRD CLAIM FOR RELIEF
### (Strict Product Liability – Product Design)

114.    Alside is in the business of designing, manufacturing, distributing, and selling products such as the Alside Two-Pane IGUs.

115.    Alside failed to use reasonable care in the design of the Alside Two-Pane IGUs. The Alside Two-Pane IGUs were designed into a defective condition, and were unreasonably dangerous for their intended uses.

116.    The Alside Two-Pane IGUs were expected to, and did reach the end users and consumers without any substantial change in the condition in which they were sold.

117.    The design defects alleged in the Alside Two-Pane IGUs were the direct and proximate cause of the injuries sustained and alleged herein, including but not limited to condensation and corrosion between windows panes.

118.    These injuries were not caused by any voluntary, unusual or abnormal handling by the Plaintiffs, the others similarly situated, or by the other foreseeable purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

## FOURTH CLAIM FOR RELIEF
### (Strict Product Liability – Product Manufacture)

119.    Alside is in the business of designing, manufacturing, distributing, and selling products such as the Alside Two-Pane IGUs.

120.    Alside failed to use reasonable care in the manufacture of the Alside Two-Pane IGUs. The Alside Two-Pane IGUs were manufactured into a defective condition, and were unreasonably dangerous for their intended uses.

121.    The Alside Two-Pane IGUs were expected to, and did reach the end users and consumers without any substantial change in the condition in which they were sold.

122.    The manufacturing defects alleged in the Alside Two-Pane IGUs were the direct and proximate cause of the injuries sustained and alleged herein, including but not limited to condensation and corrosion between windows panes.

123.    These injuries were not caused by any voluntary, unusual, or abnormal handling by the Plaintiffs, the others similarly situated, or by the other foreseeable purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty of Merchantability)**

124.    Alside, in selling the Alside Two-Pane IGUs, gave implied warranties to all purchasers and future owners of those products that they are fit for the ordinary purposes for which such goods are used.

125.    That implied warranties also guaranteed that in being "merchantable," the Alside Two-Pane IGUs were of a quality equal to that generally acceptable among those who deal in similar goods.

126.    The Alside Two-Pane IGUs are defective, as stated hereinabove. Therefore, Alside has breached the implied warranties of merchantability that it gave.

127.    Plaintiffs, all others similarly situated, and all purchasers and end users of Alside Two-Pane IGUs and/or homes or other structures containing them are normal buyers making ordinary use of the products.

128.    As a direct and proximate result of Alside's breaches of the implied warranties of merchantability, the Plaintiffs, all others similarly situated, and all foreseeable purchasers and

end users of Alside Two-Pane IGUs and/or homes or other structures containing them have been damaged as stated hereinabove.

**SIXTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty of Fitness for a Particular Purpose)**

129.    Alside, in selling the Alside Two-Pane IGUs, gave implied warranties to all purchasers and future owners of those products that they are fit for the particular purposes for which the goods were purchased.

130.    Alside, as seller, knew or had reason to know that the purchasers and ultimate owners and end users of the products would rely on Alside's skill and judgment in selecting or providing goods suitable for that purpose.

131.    The purchasers and ultimate owners and end users of the products did, in fact, rely on the seller's skill or judgment in selecting or providing goods suitable for that purpose.

132.    The Alside Two-Pane IGUs are defective, as stated hereinabove. Therefore, Alside has breached the implied warranties of fitness for a particular purpose that it gave.

133.    Plaintiffs, all others similarly situated, and all purchasers and end users of Alside Two-Pane IGUs and/or homes or other structures containing them are normal buyers making ordinary use of the products.

134.    As a direct and proximate result of Alside's breaches of the implied warranties of fitness for a particular purpose, the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them have been damaged as stated hereinabove.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Implied Warranty – Course of Dealing/Usage of Trade)

135.    Alside, in selling the Alside Two-Pane IGUs, gave implied warranties to all purchasers and future owners of those products that they Alside and the Alside Two-Pane IGUs would comply with all customary practices, standards, and warranties typical in the window industry's normal course of dealing and common usage of trade.

136.    It is the course of dealing and usage of trade in the window industry to deliver windows for residential homes and light commercial properties that have sufficient design, specifications, and durability so as to avoid premature or excessive seal failures, condensation between panes, and/or corrosion between panes.

137.    Alside breached such warranty implied in its sales and warranty transactions by providing Alside Two-Pane IGUs that did not have sufficient design, specifications, and durability so as to avoid premature or excessive seal failures, condensation between panes, and/or corrosion between panes.

138.    Proper presuit notification, to the extent required, has been provided.

139.    As a direct and proximate result of Alside's breaches of the implied warranties of course of dealing and usage of trade, the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs, and/or homes or other structures containing them have been damaged as stated hereinabove.

## EIGHTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

140.    Alside owed a duty to all purchasers of Alside Two-Pane IGUs (including their agents, representatives, and predecessors in interest) and to all future owners of them to use reasonable care in conveying information about those products and their characteristics.

141.    Alside breached that duty by negligently misrepresenting or not conveying to the purchasers of Alside Two-Pane IGUs material information known by Alside regarding their insufficient design, insufficient specifications, and poor durability that would ultimately lead to expected premature or excessive seal failures, condensation between panes, and/or corrosion between panes.

142.    The purchasers of Alside Two-Pane IGUs (and/or their agents, representatives, or predecessors in interest) did, in fact rely on the misrepresentations and lack of representations in making their decisions to purchase Alside Two-Pane IGUs.

143.    As a direct and proximate result of Alside's negligent representations and failures to disclose, and the reasonable reliance thereon, the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs have been damaged as stated hereinabove.

## NINTH CLAIM FOR RELIEF
### (Fraud, Misrepresentation, and Concealment)

144.    Alside owed a duty to all purchasers of Alside Two-Pane IGUs (including their agents, representatives, and predecessors in interest) and to all future owners of them to accurately convey information about those products and their characteristics.

145.     Alside breached that duty by recklessly, willfully, and intentionally misrepresenting or not conveying to the purchasers of Alside Two-Pane IGUs material information known by Alside regarding their insufficient design, insufficient specifications, and poor durability that would ultimately lead to expected premature or excessive seal failures, condensation between panes, and/or corrosion between panes.

146.     The purchasers of Alside Two-Pane IGUs (and/or their agents, representatives, or predecessors in interest) did, in fact rely on the misrepresentations and lack of representations in making their decisions to purchase Alside Two-Pane IGUs.

147.     As a direct and proximate result of Alside's false representations and failures to disclose, and the reasonable reliance thereon, the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs have been damaged as stated hereinabove.

## TENTH CLAIM FOR RELIEF
### (Unlawful Trade Practices – Minnesota Class Only, pursuant to Minnesota Revised Statute § 325D.13)

148.     Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs knowingly misrepresented (directly or indirectly) the true quality of the Alside Two-Pane IGUs.

149.     Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs knowingly misrepresented that they are of a particular standard, quality, or grade when they were of another standard, quality, or grade.

150.     As a direct and proximate result of Alside's false representations the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs have been damaged as stated hereinabove.

## ELEVENTH CLAIM FOR RELIEF

**(Deceptive Trade Practices – Minnesota Class Only, pursuant to Minnesota Revised Statute § 325D.44)**

151.　Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs caused the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods.

152.　Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs caused the likelihood of confusion or of misunderstanding as to Alside's affiliation, connection, or association with, or certification by, another.

153.　Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs represented that Alside and the Alside Two-Pane IGUs have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, status, affiliation, or connection that they do not have.

154.　As a direct and proximate result of Alside's false representations the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs have been damaged as stated hereinabove.

## TWELFTH CLAIM FOR RELIEF

**(Unfair or Deceptive Trade Practices – New Hampshire Class Only, pursuant to New Hampshire Revised Statute § 358-A:2)**

155.　Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs caused the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the Alside Two-Pane IGUs.

34

156.    Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs caused the caused likelihood of confusion or of misunderstanding as to its affiliation, connection or association with, or certification by, another.

157.    Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs represented that Alside and the Alside Two-Pane IGUs have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, status, affiliation, or connection that they do not have.

158.    Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs represented that the Alside Two-Pane IGUs are of a particular standard, quality, or grade when they are of another.

159.     Upon information and belief, Alside's misrepresentations were willful and/or knowing.

160.    As a direct and proximate result of Alside's false representations the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs have been damaged as stated hereinabove.

### THIRTEENTH CLAIM FOR RELIEF
**(Unfair or Deceptive Trade Practices – Nationwide Class Only, pursuant to Ohio Revised Code § 1345.02)**

161.    Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs represented that Alside and the Alside Two-Pane IGUs had sponsorship, approval, performance characteristics, accessories, uses, or benefits that they did not, in fact have.

162.    Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs represented that the Alside Two-Pane IGUs were of a particular standard, quality, or grade when they were, in fact not.

163.    Alside, in connection with the marketing and sale of its Alside Two-Pane IGUs represented that Alside had a sponsorship, approval, or affiliation that it did not, in fact have.

164.    As a direct and proximate result of Alside's false representations the Plaintiffs, all others similarly situated, and all foreseeable purchasers and end users of Alside Two-Pane IGUs have been damaged as stated hereinabove.

## FOURTEENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

165.    As a result of the wrongful conduct alleged herein, Alside received benefits at the expense of the Plaintiffs and others similarly situated, namely profits from the sale of defective windows and from warranty labor and service charges assessed against window owners.

166.    Under the circumstances described herein, it would be unjust for Alside to retain the benefits received at the expense of Plaintiffs and the others similarly situated.

## FIFTEENTH CLAIM FOR RELIEF
### (Violation of the Magnuson-Moss Warranty Act)

167.    Plaintiffs and all other similarly situated are "consumers" within the meaning of 15 U.S.C. § 2301(3).

168.    Alside was the "warrantor" within the meaning of 15 U.S.C. § 2301(5), and as such committed several violations of state law, including breach of implied warranties, negligence, and product liability.

169.    The "limited warranties" issued by Alside on its Alside Two-Pane IGUs violate the minimum federal standards in multiple respects, including but not limited to the fact that Alside requires owners of defective Alside Two-Pane IGUs to pay for delivery and labor costs even when a replacement Alside Two-Pane IGU is provided by Alside to a consumer.  *See* 15 U.S.C. § 2304(a).

170.    Alside imposes unreasonable burdens and duties upon owners of Alside Two-Pane IGUs who seek to submit warranty claims, including but not limited to: (a) providing real property deeds, (b) providing utility bills or other "proof" of home ownership, (c) providing high quality photographs of the failed Alside Two-Pane IGUs, (d) providing photographs of the often un-available or nonexistent "warranty stickers" that are allegedly affixed to all windows containing Alside Two-Pane IGUs, and (e) submission of the IGUs and homes to in-person inspection by Alside. *See* 15 U.S.C. 2304(b).

171.    Alside has improperly attempted to limit in duration or entirely disclaim state law implied warranties on the Alside Two-Pane IGUs. *See* 15 U.S.C. § 2308.

172.    Plaintiffs and all others similarly situated number more than 100, have sustained damages in excess of $50,000 by Alside's breaches of warranties and implied warranties, and are entitled to recover reasonable attorney fees and costs. *See* 15 U.S.C. § 2310(d)(1).

## SIXTEENTH CLAIM FOR RELIEF
### (Declaratory Relief)

173.    Plaintiffs, on behalf of themselves and all others similarly situated, seek Court declaratory judgment as follows:

173.1. The limited warranties issued by Alside fail to properly or validly disclaim any or all implied state law warranties.

37

173.2. The limited warranties issued by Alside are void, voidable, unenforceable, and/or unconscionable in their efforts to disclaim liability or responsibility for shipping, delivery, and/or labor costs reasonably necessary to replace failed Alside Two-Pane IGUs.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request this Court to enter judgment in their favor, and in favor of all others similarly situated against Defendants as follows:

1.      Determine that this action may be maintained and certified as a class action on a nationwide, statewide, and/or multistate basis under F.R.C.P. 23(a), 23(b)(1)(A) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under F.R.C.P. 23(c)(4); and designate and appoint Plaintiffs as class representatives, and appoint the undersigned as class counsel under F.R.C.P. 23(g).

2.      For reasonable damages in an amount to be proven at trial as to the negligence claims.

3.      For reasonable damages in an amount to be proven at trial as to the strict product liability claims.

4.      For reasonable damages in an amount to be proven at trial as to the breach of implied warranty claims.

5.      For reasonable damages in an amount to be proven at trial as to the negligent misrepresentation claims.

6.      For reasonable damages in an amount to be proven at trial as to the fraud, misrepresentation, and concealment claims.

7.     For reasonable damages in an amount to be proven at trial as to the unlawful, unfair, and deceptive trade practices claims.

8.     For reasonable damages in an amount to be proven at trial as to the Magnuson Moss claims.

9.     For reasonable damages in an amount to be proven at trial as to the class action claims.

10.     For punitive or other exemplary damages in an amount to be proven at trial based on Alside's intentional, knowing, willful, wanton, and reckless unlawful conduct.

11.     For declaratory relief as more specifically prayed for hereinabove.

12.     For all costs, expenses, disbursements, and attorney fees incurred by Plaintiffs as may be permitted by any applicable statute or contract.

13.     For pre-judgment interest, as permitted by law, from the date of damage or wrongful withholding to the date of the entry of judgment, as well as post-judgment interest until paid.

14.     For such other legal or equitable relief as the Court may deem just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Dated this 20th day of May, 2015.

BENSON, KERRANE, STORZ & NELSON, P.C.

_____

Alex M. Nelson, Esq. (MN License No. 392687)
William J. Rogers, Esq. (MN License No. 332951)
Michael J. Lowder, Esq. (MN License No. 396208)

3800 American Boulevard West, Ste. 1500
Bloomington, MN 55431
Phone: (952) 466-7574
anelson@bensonpc.com
wrogers@bensonpc.com
mlowder@bensonpc.com
***Attorneys for Plaintiffs***


## MINN. STAT. § 549.211 ACKNOWLEDGMENT

The undersigned attorney for the Plaintiffs acknowledges that sanctions may be imposed in this action under Minnesota Statutes Section 549.211 for violation(s) of the provisions of that section.

Dated this 20th day of May, 2015.

BENSON, KERRANE, STORZ & NELSON, P.C.

_____

Alex M. Nelson, Esq. (MN License No. 392687)
William J. Rogers, Esq. (MN License No. 332951)
Michael J. Lowder, Esq. (MN License No. 396208)
3800 American Boulevard West, Ste. 1500
Bloomington, MN 55431
Phone: (952) 466-7574
anelson@bensonpc.com
wrogers@bensonpc.com
mlowder@bensonpc.com
***Attorneys for Plaintiffs***