# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CHERYL LUCKEY, CHRISTINE COLE, ELIZABETH WELNA, ERIC TOOP, ROBERT SQUATRITO, and WENDY MACKEY, *individually and on behalf of all those similarly situated*, | Civil No. 15-2512 (JRT/JSM) |

Plaintiffs,

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE**

v.

ALSIDE, INC., ASSOCIATED MATERIALS, LLC, and ASSOCIATED MATERIALS INCORPORATED,

Defendants.

---

Alex M. Nelson and Michael J. Lowder, **BENSON, KERRANE, STORZ & NELSON, P.C.**, 3800 American Boulevard West, Suite 1500, Bloomington, MN 55431, and William James Rogers, **LEVIN & EDIN, LP**, 1280 Landmark Towers, 345 St. Peter Street, St. Paul, MN 55102, for plaintiffs.

Michael K. Farrell and Daniel M. Kavouras, **BAKER & HOSTETLER**, PNC Center, 1900 East Ninth Street, Suite 3200, Cleveland, OH 44114, and Clifford M. Green, Bethany Krueger, and Karl C. Procaccini, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for defendants.

Plaintiffs Cheryl Luckey, Christine Cole, Robert Squatrito, Eric Toop, Elizabeth Welna, and Wendy Mackey ("Plaintiffs") own homes containing two-pane windows made by Defendants Alside Inc.; Associated Materials, LLC; and Associated Materials, Inc. ("Defendants"). According to Plaintiffs, the windows are defective because water

condenses between the panes and causes corrosion.  Plaintiffs commenced this action against Defendants individually and on behalf of a putative nationwide class and two state-specific classes.  They allege product liability, warranty-related, and misrepresentation claims.  Defendants now move to dismiss the action for improper venue, or, alternatively, to transfer venue to the Northern District of Ohio.

Because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Minnesota, the Court will deny Defendants' motion to dismiss for improper venue.  Additionally, because the convenience of the parties and witnesses and the interests of justice do not strongly favor transfer to the Northern District of Ohio, the Court will also deny Defendants' motion to transfer venue.

## BACKGROUND

Defendants are three Delaware business entities, each with their principal place of business and headquarters in Cuyahoga Falls, Ohio, which is in the Northern District of Ohio judicial district.  (Second Am. Compl. ("Compl.") ¶¶ 11-13, Aug. 31, 2015, Docket No. 23.)  Defendants design, manufacture, distribute, and sell windows, which are used in residential homes as well as commercial properties.  (*Id.* ¶ 23.)  Defendants sell their windows to "builders, contractors, and professional remodeling companies nationwide directly, through company-owned supply centers and through independent distributors." (Decl. of Dana Schindler ("Schindler Decl.") ¶ 3, Oct. 8, 2015, Docket No. 30.)

Defendants have approximately 2,500 employees nationwide, over 500 of whom work in Ohio.  (Decl. of Erica Cofojohn ("Cofojohn Decl.") ¶¶ 2-3, Oct. 8, 2016, Docket

No. 27.)  All of Defendants' senior management, including their CEO, CFO, treasurer, and controller, work at the Ohio headquarters.  (*Id.* ¶ 5.)  Additionally, the company-wide engineering, marketing, warranty, accounting, finance, IT, human resources, and procurement departments are located in Ohio.   (*Id.* ¶¶ 5-6.)   Defendants have manufacturing facilities in five states:  Ohio, Iowa, North Carolina, Washington, and Arizona.  (Decl. of Dan Green ("Green Decl.") ¶¶ 8-9, Oct. 8, 2015, Docket No. 28.)  For a twelve month period ending on June 30, 2015, Defendants manufactured approximately 2.49 million windows, 29.2% of which were manufactured at the Ohio facility.  (*Id.* ¶ 8.)  Defendants also have approximately 100 distribution centers located around the United States, two of which are located in Minnesota.  (Reply in Supp. of Defs.' Mot. at 2, Nov. 12, 2015, Docket No. 38.)

According to Defendants, the majority of their windows are designed by engineering personnel at the Ohio headquarters (Green Decl. ¶ 3); most of their product testing occurs in Ohio (*id.* ¶ 11); their "email and electronic document storage servers are located in Ohio" (Cofojohn Decl. ¶ 8); all warranty claims are handled from the Ohio headquarters (Decl. of Dana Mason ¶ 2, Oct. 8, 2015, Docket No. 29); and all marketing materials are designed, prepared, and approved by personnel at the Ohio headquarters (Schindler Decl. ¶ 6).

Plaintiffs Luckey, Mackey, Squatrito, Toop, and Welna reside in Minnesota, and Plaintiff Cole resides in New Hampshire.  (Compl. ¶¶ 5-10.)  Each plaintiff owns a home outfitted with two-pane insulated glass unit ("IGU") windows manufactured by Defendants.  (*Id.* ¶¶ 1, 22-24.)  Two-pane IGU windows have two panes, which are

separated by "low emissivity metallic films" and "inert argon gas," and "make[] use of a single seal to keep air from passing in or out of the glass assembly."  (*Id.* ¶ 24.)  None of the Plaintiffs residing in Minnesota purchased their windows directly from Defendants or had any direct dealings with Defendants.  Instead, Plaintiffs' windows were purchased on their behalf by the developers, contractors, and/or subcontractors who built their homes. (*Id.* ¶¶ 56, 76, 80, 84; *id.* at 22 ¶ 2.)  With the exception of Mackey, all Plaintiffs are the beneficiaries of "lifetime limited warranties" issued by Defendants.  (*Id.*)

All Plaintiffs allege that their windows have begun to "incur condensation and/or corrosion of the low[ emissivity] metallic films" between the panes, leading to property damage, loss of use of the windows, and other economic and non-economic damages. (*Id.* ¶¶ 1, 26.)  Plaintiffs allege their windows are failing "in unacceptably high numbers and at unacceptably early timeframes in the life of the products," as compared to windows produced by other manufacturers.  (*Id.* ¶ 26.)  All Plaintiffs, except for Mackey, have submitted one or more warranty claims and are dissatisfied with how their warranty claims have been handled and/or resolved.  (*Id.* ¶¶ 55-86; *id.* at 22 ¶¶ 1-5.)

Plaintiffs commenced this diversity action against Defendants individually and on behalf of putative nationwide, Minnesota, and New Hampshire classes.  Each class is comprised of individuals who own or have owned property containing the two-pane IGU windows at issue.  (*Id.* ¶ 4.)  Plaintiffs' allegations fall into three general categories: First, Plaintiffs assert product liability claims against Defendants.  Plaintiffs allege that the two-pane IGU windows were defectively designed, tested, and manufactured. Second, Plaintiffs allege that Defendants misrepresented the quality of the two-pane IGU

windows in their advertisements and marketing materials.  Plaintiffs assert common law fraud and misrepresentation claims as well as statutory consumer protection claims. Third, Plaintiffs allege warranty-related claims.  Plaintiffs contend that Defendants have breached various implied warranties and also that Defendants' lifetime limited warranties "violate state and federal law, fail to fully or validly disclaim state law implied warranties, and are void, voidable, unenforceable, and/or unconscionable." (*Id.* ¶ 3.)

Defendants now move to dismiss the action for improper venue under Federal Rule of Civil Procedure 12(b)(3).  (Mot. to Dismiss or Transfer, Oct. 8, 2015, Docket No. 24.)  Alternatively, Defendants move to transfer the action to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).  (*Id.*)

## ANALYSIS

## I.    MOTION TO DISMISS FOR IMPROPER VENUE

### A.    Standard of Review

Rule 12(b)(3) provides that a party may move to dismiss an action if it is filed in an improper venue.  Fed. R. Civ. P. 12(b)(3).  "When a defendant seeks dismissal for improper venue under Rule 12(b)(3), . . . [the defendant] bears the burden of demonstrating that the plaintiff's chosen venue lacks a sufficient connection to the parties' dispute." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720, 2009 WL 1684428, at *2 (D. Minn. June 16, 2009) (citing *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947)).  To satisfy this burden, "the defendant must submit affidavits or other evidence defeating venue in the chosen forum." *Id.*  Thus, "unlike

motions to dismiss under [Rule] 12(b)(6), the Court may consider matters beyond the pleadings when ruling on a motion to dismiss for improper venue." *Id.*

### B.    Venue Under 28 U.S.C. § 1391

Venue in diversity cases is governed by 28 U.S.C. § 1391.  "One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute.'"  *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).  Section 1391 provides several bases for venue, but only one is relevant to the instant motion:  "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  In evaluating whether venue is proper under this subsection, the Court does not decide "which district among two or more potential forums is the 'best' venue." *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994).  Rather, the Court "ask[s] whether the district the plaintiff chose had a substantial connection to the claim," irrespective of whether "other forums" may have "had greater contacts."  *Id.* Additionally, the Court's "*focus* must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state." *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014).

Here, Defendants argue that venue in the District of Minnesota is improper under § 1391(b)(2) because none of the events or omissions giving rise to Plaintiffs' claims occurred here.  With regard to Plaintiffs' defective design and manufacturing claims, Defendants contend that none of their windows are designed or manufactured in

Minnesota; instead, the majority of that work occurs at Defendants' headquarters in the Northern District of Ohio.   With regard to Plaintiffs' false advertising and misrepresentation claims, Defendants contend that their marketing and advertising activity is handled solely by their marketing department, which is also located at the Ohio headquarters.  With regard to Plaintiffs' warranty-related claims, Defendants contend that all warranties are administered exclusively by their warranty department, which is again located in Ohio.

While the Court agrees that a good portion of the events or omissions giving rise to Plaintiffs' claims occurred in the Northern District of Ohio, the Court nevertheless finds that the District of Minnesota is a proper venue under § 1391(b)(2).  Contrary to Defendants' arguments, a substantial part of the events or omissions giving rise to Plaintiffs' claims did occur in this District.  First, Defendants sold their allegedly defective windows within Minnesota.  Defendants are correct that the designing and manufacturing of a product is a substantial part of any product defect claim.  But so is the sale of that product – without the sale, there is no claim.  Second, Defendants issued warranties to, and thus entered into contracts with, individuals residing in Minnesota for windows sold and located within the state.  Because Plaintiffs allege that Defendants' warranties violate state and federal law and are unconscionable, the actual formation of the warranty contract constitutes a substantial event underlying Plaintiffs' claims.  Third and finally, Plaintiffs allege that Defendants disseminated misleading marketing materials within Minnesota.  While the creation of those materials in Ohio was certainly a

substantial event giving rise to Plaintiffs' claims, no law could be broken until Defendants actually disseminated them to the public.[1]

If the Court were to accept Defendants' logic, it would in essence be finding that a plaintiff could not bring a product defect claim in a particular venue unless the defendant designed or manufactured the product in that venue, could not bring a warranty-related claim in a particular venue unless the defendant's warranty department was located in that venue, and could not bring a claim based on a misleading advertisement in a particular venue unless the defendant's marketing department was located in that venue. This is plainly not the law. Accordingly, because the Court finds that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Minnesota, the Court will deny Defendants' motion to dismiss for improper venue.[2]

## II.    MOTION TO TRANSFER VENUE

Defendants alternatively argue that this action should be transferred to the Northern District of Ohio. A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "a district court may transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties

---

[1] Defendants argue that Plaintiffs cannot rely on the fact they marketed their windows in Minnesota as a basis for venue under § 1391(b)(2) because Plaintiffs have not alleged that they ever personally reviewed or relied on any marketing materials. But this detail is inconsequential. While it is true that Plaintiffs do not allege that they personally reviewed or relied on any marketing materials from Defendants, they do allege that the developers, contractors, and/or subcontractors who built their homes did so on their behalves. (Compl. ¶¶ 56, 76, 80, 84; *id.* at 22 ¶¶ 2, 140-64.)

[2] Because the Court finds that venue is proper under § 1391(b)(2), it will not consider the parties' arguments regarding whether venue is proper under another subsection.

and witnesses, [and] in the interests of justice."   The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal quotations omitted).

In deciding a motion to transfer under § 1404(a), the Court considers three factors: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 691 (8th Cir. 1997).  To prevail, the moving party must show that the balance of these factors "strongly favors" transfer. *Jacques v. Dakota, Minn. & E. R.R. Corp.*, No. 07-248, 2008 WL 835651, at *1 (D. Minn. Mar. 27, 2008) (quoting *Brockman v. Sun Valley Resorts, Inc.,* 923 F. Supp. 1176, 1179 (D. Minn. 1996)).  "Ultimately, the decision to transfer a case is committed to the discretion of the district court." *Id.* (citing *Terra Int'l*, 119 F.3d at 691).

Here, the parties agree that Plaintiffs could have brought this action in the Northern District of Ohio.  The motion thus turns on whether Defendants can show that the balance of § 1404(a) factors strongly favors transfer.

## A.    Convenience of the Parties and Witnesses

In assessing convenience, courts generally "afford significant weight to the plaintiff's choice of forum." *Id.*  Courts will also consider "(1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, [and] (4) the location where the conduct

complained of occurred." *Vogel v. E.D. Bullard Co.*, No. 11-2563, 2012 WL 38825, at *3 (D. Minn. Jan. 9, 2012) (quoting *Terra Int'l*, 119 F.3d at 696).

Here, Defendants argue that Plaintiffs' choice of forum should not receive any weight or deference because they filed their case as a putative nationwide class action. But while the Plaintiffs' choice of forum may be entitled to **less** deference because they seek to represent a nationwide class, this does not mean that their choice is entitled to **no** deference. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given **less** weight" (emphasis added) (citation omitted)). Indeed, five of the named Plaintiffs reside in Minnesota; Plaintiffs also bring claims on behalf of a Minnesota class; a substantial part of the conduct giving rise to Plaintiffs' claims occurred in Minnesota (as described above); and, significantly, there is no guarantee that Plaintiffs will succeed in certifying a nationwide class. Plaintiffs' choice of Minnesota as a forum thus deserves at least some deference.

In light of this deference, the Court is not persuaded that transfer to the Northern District of Ohio would be more convenient for the parties or witnesses. Defendants argue that litigation in the District of Minnesota would be comparatively more expensive for them than it would be for Plaintiffs in the Northern District of Ohio because they will incur substantial costs to bring their employees from Ohio to Minnesota to testify. But this fact hardly supports transfer. The Minnesota Plaintiffs who intend to testify would also incur costs to go to Ohio, and "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Commc'ns*

*Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).   Moreover, even if the Court were to assume that Defendants' costs would be comparatively higher than Plaintiffs' costs, there is no indication that the cost difference would be so high as to outweigh other factors that militate against transfer.  Aside from costs associated with bringing employee-witnesses to the District of Minnesota for hearings and trial, it is unclear what extra costs Defendants would incur.  Depositions of those witnesses, for example, are likely to take place in Ohio.

Defendants also argue that transfer is proper because the majority of witnesses are located in the Northern District of Ohio.  Defendants contend that the key witnesses in this case will be their own senior executives and employees who work at the Ohio headquarters; these are the individuals who set company policy, designed and manufactured the windows, devised the marketing scheme, and administered the warranties.  Yet even assuming that the Northern District of Ohio is a convenient forum, it does not necessitate a finding that it is a **more** convenient forum.  *See Van Dusen*, 376 U.S. at 645-46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.")  The sheer number of witnesses offered by Defendants will not decide which way the convenience factor tips. *Terra Int'l*, 119 F.3d at 696.   Furthermore, because most of the above-mentioned witnesses are Defendants' employees, the Court can assume that they "will appear voluntarily in a foreign forum." *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009) (quoting *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993)).  And significantly, Defendants have not identified by name any

non-party witnesses who reside in Ohio and over whom this Court would not have subpoena power. *Graff*, 33 F. Supp. 2d at 1121-22 (noting that the location and number of non-party witnesses is a key factor in assessing convenience). Altogether, the location of Defendants' employee-witnesses is not enough to overcome the deference given to Plaintiffs' choice of forum.

Defendants lastly argue that transfer is required because most of the relevant records, files, and documents are located in Ohio. But the Court is not convinced. As Plaintiffs point out, some of this evidence can be transmitted electronically, rendering its physical location immaterial. And even though the Northern District of Ohio may prove more convenient "if the need arises to refer to original documents or evidence in the litigation," *In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010), this need is insufficient to overcome the deference given to Plaintiffs' choice of forum.

Overall, the Court finds that Defendants have not shown that the convenience of the parties and witnesses favors transfer to the Northern District of Ohio.

## B.      Interests of Justice

The Court must also consider whether transferring venue would promote the interests of justice. In examining the interests of justice, courts generally consider factors such as "judicial economy," "each party's ability to enforce a judgment," "obstacles to a fair trial," and "the advantages of having a local court determine questions of local law." *Howard v. Judge Law Firm*, No. 09-1644, 2010 WL 2985686, at *4 (D. Minn. July 26, 2010) (citing *Terra Int'l*, 119 F.3d at 696)).

Defendants first argue that judicial economy favors transfer because the District of Minnesota has a more congested docket.  Defendants note that as of March 31, 2015, the District of Minnesota had 859 weighted filings per judgeship, whereas the Northern District of Ohio had only 384.  In rebuttal, Plaintiffs offer a different statistic – expected case duration from filing to disposition or trial.  Plaintiffs argue that this data shows that the District of Minnesota is more efficient at resolving cases.  Regardless of what the data actually shows, however, the Court finds that these case statistics are insufficient to warrant transfer.  As the Eighth Circuit has noted, such statistics are often "speculative" and "may not always tell the whole story." *In re Apple*, 602 F.3d at 915 (quoting *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)).  Furthermore, docket congestion "is not 'by itself, a dispositive factor'" when other factors favor the opposite outcome. *Id.* (quoting *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003)).

Defendants also argue that transfer will not impair Plaintiffs' right to a fair trial or their ability to enforce a judgment.  The Court agrees – the Northern District of Ohio is fully capable of handling this action fairly and impartially.  But again, this factor does not favor transfer because Defendants have presented no argument suggesting that the District of Minnesota is not just as capable.

Defendants lastly argue that the Northern District of Ohio has the strongest interest in adjudicating the action.   Defendants contend that because Plaintiffs purport to represent a nationwide class, the District of Minnesota has the same interest in the outcome of the case as any other district with respect to class members, whereas the Northern District of Ohio has a greater interest because its citizens include both class

members and Defendants. *See Realson v. Univ. Med. Pharm. Corp.*, No. 409-3277, 2010 WL 1838911, at \*5 (D.S.C. May 6, 2010). The Court, however, is not persuaded by this argument. First, it is far from certain whether Plaintiffs will succeed in certifying their nationwide class. Second, Minnesota retains a strong interest in the matter – a substantial portion of the complained-of conduct occurred here, five of the six named Plaintiffs reside here, and Plaintiffs purport to represent a Minnesota class (which also may or may not be certified).

Overall, the Court will deny Defendants' motion to transfer. Plaintiffs' choice of venue is entitled to at least some deference, and Defendants have not met their burden of showing that the convenience of the parties and witnesses and the interests of justice strongly favor transfer.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants motion to dismiss or transfer for improper venue [Docket No. 24] is **DENIED**.

DATED:  April 18, 2016                                    ____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                                      Chief Judge
                                                        United States District Court