# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CHERYL LUCKEY, CHRISTINE COLE, ELIZABETH WELNA, ERIC TOOP, and ROBERT SQUATRITO, | Civil No. 15-2512 (JRT/HB) |

Plaintiffs,

v.

ALSIDE, INC., ASSOCIATED MATERIALS, LLC, and ASSOCIATED MATERIALS INCORPORATED,

Defendants.

**MEMORANDUM OPINION
AND ORDER ON DEFENDANTS'
MOTION FOR JUDGMENT ON
THE PLEADINGS**

---

Alex M. Nelson, **BENSON, KERRANE, STORZ & NELSON, PC**, 7760 France Avenue South, Suite 1350, Bloomington, MN 55435, and William James Rogers, **BENSON, KERRANE, STORZ & NELSON, PC**, 3800 American Boulevard West, Suite 1500, Bloomington, MN 55431, for plaintiffs.

Michael K. Farrell, **BAKER & HOSTETLER LLP**, 3200 PNC Center, 1900 East Ninth Street, Suite 3200, Cleveland, OH 44114, and Karl C. Procaccini, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for defendants.

---

Plaintiffs Cheryl Luckey, Christine Cole, Elizabeth Welna, Eric Toop, and Robert Squatrito are homeowners whose homes contain windows designed and manufactured by Defendants Associated Materials, LLC, and Associated Materials, Incorporated (doing business as "Alside").[1]  Plaintiffs assert numerous claims against Alside on behalf of themselves and those similarly situated based on alleged defects in their Alside windows.

---

[1] Alside moves to dismiss named Defendant "Alside, Inc." from the case entirely because that Defendant is not an existing corporate entity.  Plaintiffs provided no response indicating the contrary.  Therefore, the Court will dismiss all claims against "Alside, Inc."

Their claims include negligence and strict liability related to the windows' design and manufacture; breach of implied warranties; fraud; negligent misrepresentation; consumer fraud under Minnesota, New Hampshire, and Ohio law; unjust enrichment; and a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* Alside moves for judgment on the pleadings on all claims pursuant to Fed. R. Civ. P. 12(c), asserting that the complaint fails to state a claim upon which relief may be granted.

The Court will grant Alside's motion with respect to all claims except breach of implied warranty of merchantability and breach of implied warranty based on course of dealing/usage of trade. The negligence and strict liability claims are barred by the economic loss doctrine. Plaintiffs have failed to plead all elements of breach of implied warranty of fitness for a particular purpose, common law fraud, and unjust enrichment. As for the statutory consumer fraud claims, the Court finds that Plaintiffs have failed to plead these claims with particularity as required by Fed. R. Civ. P. 9(b). Plaintiffs abandoned their claim under the MMWA. The two remaining implied warranty claims will survive judgment on the pleadings because Plaintiffs have pled facts which, if true, could indicate that Alside's limited warranties fail of their essential purpose.

## BACKGROUND

### I.   PLAINTIFFS' FAILING ALSIDE WINDOWS[2]

Defendants Associated Materials, LLC, and Associated Materials, Inc. are Delaware corporations with a principal place of business in Ohio. (Second Am. Compl.

---

[2] The Court assumes Plaintiffs' allegations to be true at the motion-to-dismiss stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

("Compl.") at 4, Aug. 31, 2015, Docket No. 23.)[3]   Alside designs, manufactures, distributes, and sells windows to builders and distributors in the continental United States for use in commercial and residential properties, including the particular type of window at issue in this case: the two-pane insulated glass unit ("IGU").   (*Id.* at 6-7.)   IGUs have two panes of glass that are separated by low emissivity metallic films and inert argon gas; the panes "make[] use of a single seal to keep air from passing in or out of the glass assembly."   (*Id.* at 7.)   After the IGU frame is assembled around the glass panes, the gas is inserted through a small hole, which is then hermetically sealed.   If the seal fails, normal air can fill the space between the panes of glass, causing corrosion and condensation between the panes.   (*See id.* at 12, 14.)   Alside sells its windows with a variety of limited warranties, the details of which depend on the specific line of window at issue.   (*Id.* at 12-15.)

Plaintiffs Luckey, Squatrito, Toop, and Welna (the "Minnesota Plaintiffs") own homes containing Alside Performance Series windows which utilize Alside's IGU technology. (*Id.* at 3-4, 15, 19-21.)   The Minnesota homes were all constructed between 2006 and 2008, in the Symphony at Town Center subdivision ("Symphony") in Ramsey, Minnesota.   (*Id.* at 15-16, 19-21.)   Plaintiffs allege on information and belief that all eighty-eight townhomes in Symphony contain Alside Performance Series windows.   (*Id.* at 16.)   The Minnesota homes included the Alside windows in their original construction; thus the Minnesota Plaintiffs did not directly purchase their windows from Alside, but rather, Alside sold windows to developers, contractors, and/or subcontractors who built

---

[3] The Court will cite to CM/ECF page numbers rather than paragraph numbers in the complaint because the complaint contains a numbering error.   (*See* Compl. at 21-22.)

the Minnesota homes.   (*Id.* at 15, 19-21.)   Plaintiff Christine Cole lives in New

Hampshire; she purchased a full set of replacement windows containing Alside's IGU

technology for her home on January 22, 2002.   (*Id.* at 3, 17.)

Plaintiffs assert that the IGUs are failing, meaning that they incur condensation

and/or corrosion between the panes, "in unacceptably high numbers and at unacceptably

early timeframes in the life of the products," as compared to windows produced by other

manufacturers, and "[m]any Alside Two-Pane IGUs that have not yet actually failed are

subject to premature failure."   (*Id.* at 7-8.)   Plaintiffs attribute the widespread IGU seal

failure to design and manufacturing defects,[4] resulting from Alside's alleged failure to

perform adequate "testing, quality control, and research and development" that could

have led to "greater durability and reliability" and would have made the "IGUs'

construction more in line with the accepted industry standards."   (*Id.* at 7-9.)   In addition,

Plaintiffs allege that Alside was aware or should have been aware of the defects in the

IGUs, positing that even if Alside lacked actual notice, the "abnormally large number of

warranty claims" from IGU owners put Alside on notice of the defects.   (*Id.* at 9.)

---

[4] Plaintiffs allege a "non-exclusive list of defects and deficiencies" in the IGUs including:

- "Lack of edge deletion on the 'low-e' metallic films on the window panes"
- "Lack of desiccant, or inadequate desiccant inside the window pane spacer"
- "Edge seal defects and failures"
- "Lack of secondary window seal"
- "Improperly high frost point between the panes of glass" and
- "Improper or inadequate glass preparation leading to visible 'roller marks' in the condensation and corrosion patterns of the windows"

(Compl. at 8.)

Despite this awareness, Alside failed to notify or warn customers and also failed to recall the defective IGUs, which it continues to manufacture and sell. (*Id.* at 9-10.)

Plaintiffs allege that they each own one or more Alside window that has "failed," and that "no less than 40 of the 88 townhomes in Symphony contain at least one [Alside IGU window] with condensation and/or corrosion between the panes of glass, and many units have multiple [Alside IGU windows] with that type of visible damage to them." (*Id.* at 16-17.) Plaintiffs allege that their damages include property damage to the windows themselves, "inconvenience, aggravation, loss of use of their windows, other noneconomic damages, and/or economic damages as a result of the condensation and corrosion that obscures the windows, and the inadequate warranties and warranty service provided by [Alside]." (*Id.* at 2.)

The Minnesota Plaintiffs first noticed the failure of one or more Alside IGUs "[a]t some point in time" after purchasing their homes, while Cole noticed her first IGU failure in February 2004. (*Id.* at 15, 17, 20-21.) Each Plaintiff has submitted at least one warranty claim to Alside based on condensation and/or corrosion between window panes.[5] Alside provided replacement IGUs in each instance at no cost to the warranty-

---

[5] Luckey submitted a first warranty claim in October 2014, and Alside provided a replacement window in November 2014, but Alside did not pay for the removal of the damaged IGU from Luckey's home or installation of the new IGU. (Compl. at 15-16.) Luckey submitted a second warranty claim in February 2015, which Luckey subsequently withdrew. (*Id.* at 16.)

Similarly, Squatrito, Toop and Welna submitted warranty claims in March 2015, April 2015, and May 2015, respectively. (*Id.* at 20-22.) Alside replaced each of their defective IGUs, though as with Luckey, Alside did not pay for removal of the old or installation of the new IGUs. (*Id.*)

Cole submitted warranty claims to Alside in February 2004, March 2007, March 2008, March 2009, and July 2010, covering a total of eight windows; Alside provided replacement

(Footnote continued on next page.)

holder with the exception of Cole – in Cole's case, Alside only provided free replacements for ten years, after which Alside relied on language in its limited warranty and instead offered to provide replacement IGUs for 50% of the cost.  (*Id.* at 18.)  Alside did not pay for removal of old or installation of new IGUs for any of the Plaintiffs, based on its interpretation of Plaintiffs' limited warranties.  Plaintiffs either paid a contractor to do this work or, in Cole's case, installed the replacement IGUs themselves.  (*Id.* at 16-18, 20-21.)

## II.   PROCEDURAL HISTORY

Plaintiffs initiated this lawsuit on May 20, 2015 and filed the operative complaint on August 31, 2015.  The Court has subject matter jurisdiction based on 28 U.S.C. § 1332(d)(2) because the amount in controversy for the proposed class exceeds $5,000,000 and at least one class member is a citizen of a state other than Ohio or Delaware – Alside's states of citizenship.  Plaintiffs assert sixteen claims on behalf of themselves and three proposed classes – a nationwide class, a Minnesota class, and a New Hampshire class – comprised of "[a]ll persons (including both natural persons and legal entities) [in the relevant geographic location] who presently own or have owned real property containing Alside Two-Pane IGUs."  (*Id.* at 24-25.)  Plaintiffs' allegations fall

_____
(Footnote continued.)

IGUs in each instances.  (*Id.* at 17-18.)  In March 2012, Cole submitted a sixth warranty claim for three failed IGUs, and under the terms of Cole's warranty, Alside agreed to replace the IGUs "if Cole was willing to pay 50% of the cost" of the new IGUs, since the windows were at that time more than ten years old.  (*Id.* at 18.)  Cole alleges that an additional six IGUs have failed since June 2012, bringing the total number of IGU failures in Cole's home to seventeen since 2004.  (*Id.* at 19.)  Cole wrote a letter to Alside complaining about the quality of her windows and the accompanying warranty in June 2012.  (*Id.*)

into three general categories: product liability in tort,[6] fraud and misrepresentation,[7] and breach of warranty.[8]

On October 8, 2015, Alside filed a motion to dismiss based on improper venue, or alternatively to transfer venue, which the Court subsequently denied.  On May 2, 2016, Alside filed an Answer, and on May 10, 2016, Alside filed the instant motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[9]

# ANALYSIS[10]

## I.   STANDARD OF REVIEW

Reviewing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the Court applies the same standard as under a motion to dismiss pursuant to Rule 12(b)(6).  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  Therefore, the Court is required to "'accept as true all factual allegations set out in the complaint' and to

---

[6] Plaintiffs' four product liability claims include: Negligent Product Design (Claim 1); Negligent Product Manufacture (Claim 2); Strict Product Liability – Product Design (Claim 3); and Strict Product Liability – Product Manufacture (Claim 4).

[7] Plaintiffs' seven fraud- and misrepresentation-related claims include: Negligent Misrepresentation (Claim 8); Fraud, Misrepresentation, and Concealment (Claim 9); Unlawful Trade Practices pursuant to Minn. Stat. § 325D.13 (Claim 10); Deceptive Trade Practices pursuant to Minn. Stat. § 325D.44 (Claim 11); Unfair or Deceptive Trade Practices pursuant to N.H. Rev. Stat. § 358-A:2 (Claim 12); Unfair or Deceptive Trade Practices pursuant to Ohio Rev. Code § 1345.02 (Claim 13); and Unjust Enrichment (Claim 14).

[8] Plaintiffs' four warranty-related claims include: Breach of Implied Warranty of Merchantability (Claim 5); Breach of Implied Warranty of Fitness for a Particular Purpose (Claim 6); Breach of Implied Warranty – Course of Dealing/Usage of Trade (Claim 7); and Violation of the MMWA, 15 U.S.C. § 2301(3) (Claim 15).

[9] Since Alside filed the instant motion, the parties stipulated to the dismissal of claims filed by one of the named plaintiffs, Wendy Mackey.  (Order, June 10, 2016, Docket No. 59.)

[10] The parties agree for purposes of this motion that Minnesota substantive law applies to Minnesota Plaintiffs' claims and New Hampshire substantive law applies to Cole's claims.

'construe the complaint in the light most favorable to the [plaintiff], drawing all inferences in [the plaintiff's] favor.'" *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). Although a complaint need not contain "detailed factual allegations," it must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In addition to the pleadings, the Court may properly consider materials that are necessarily embraced by the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

## II.    PRODUCT LIABILITY AND NEGLIGENT MISREPRESENTATION

Plaintiffs failed to brief any response to Alside's arguments in favor of dismissal of Claims 1-4 (alleging negligent product design and manufacturing and strict product liability based on design and manufacturing defects) or Claim 8 (negligent misrepresentation). This abandonment of the claims alone is a sufficient basis for dismissal. *See, e.g.*, *Espey v. Nationstar Mortg., LLC*, No. 13-2979, 2014 WL 2818657, at *11 (D. Minn. June 19, 2014); *Koenen v. Homecomings Fin. LLC*, No. 11-945, 2011 WL 3901874, at *2-3 (D. Minn. Sept. 6, 2011).

Even if Plaintiffs had not abandoned these claims, Alside would still be entitled to judgment on the pleadings as a matter of law based on the economic loss doctrine. Under

Minn. Stat. § 604.101, "a buyer may not bring a product defect tort claim for compensatory damages unless the defect 'caused harm to the buyer's tangible personal property other than the goods or the buyer's real property.'" *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 829 (D. Minn. 2010) (quoting Minn. Stat. § 604.101, subd. 3).  "A buyer is also prohibited from bringing 'a common law misrepresentation claim against a seller relating to the goods sold . . . unless the misrepresentation was made intentionally or recklessly.'" *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1145 (D. Minn. 2016) (quoting Minn. Stat. § 604.101, subd. 4).

New Hampshire courts similarly bar tort claims seeking damages for purely economic loss, defined as "the diminution in the value of a product because it is inferior in quality," as opposed to harm to persons or property resulting from a defective product. *Lockheed Martin Corp. v. RFI Supply, Inc.*, 440 F.3d 549, 552-56 (1st Cir. 2006) (quoting *Ellis v. Robert C. Morris, Inc.*, 513 A.2d 951, 954 (N.H. 1986), *overruled on other grounds by Lempke v. Dagenais*, 547 A.2d 290, 297-98 (N.H. 1988)).  New Hampshire also bars negligent misrepresentation claims seeking damages for purely economic loss other than in narrow circumstances not present here. *See Plourde Sand & Gravel v. JGI E., Inc.*, 917 A.2d 1250, 1257-58 (N.H. 2007).

Plaintiffs have failed to allege facts sufficient to demonstrate damages beyond economic loss.  They allege damages to the windows, in the form of condensation and corrosion, as well as "inconvenience, aggravation, loss of use of their windows, other noneconomic damages, and/or economic damages as a result of the condensation and corrosion." (Compl. at 2, 16-17.)  Because the only harm alleged with sufficient

specificity is economic loss, *see Iqbal*, 556 U.S. at 678, the economic loss doctrine bars Plaintiffs' claims for negligent product design and manufacture and strict liability.[11] Plaintiffs' common law negligent misrepresentation claim also fails as a matter of law under Minnesota and New Hampshire law.  Minn. Stat. § 604.101, subd. 4 ("A buyer may not bring a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly."); *Plourde*, 917 A.2d at 1257-58 (requiring the plaintiff to plead that that the defendant had a special reason to anticipate the reliance of the plaintiff on a negligent misrepresentation and also that the plaintiff directly relied on the alleged negligent misrepresentation in order to state a claim for negligent misrepresentation resulting in purely economic loss).

## III.   WARRANTY CLAIMS

In Claims 5 and 7, Plaintiffs allege that in selling defective IGUs, Alside breached the implied warranty of merchantability and an implied warranty arising from course of dealing or usage of trade.[12] *See* Minn. Stat. § 336.2-314, N.H. Rev. Stat. § 382-A:2-314.

---

[11] Plaintiffs' strict liability claims must fail for the additional reason that the complaint does not include any allegations tending to show that the IGUs were unreasonably dangerous. *See Gardner v. Brillion Iron Works, Inc.*, 120 F. Supp. 3d 928, 934 (D. Minn. 2014); *Webb v. Ethicon Endo-Surgery, Inc.*, No. 13-1947, 2014 WL 7213202, at *4 (D. Minn. Dec. 17, 2014); *Bougopoulos v. Altria Grp., Inc.*, 954 F. Supp. 2d 54, 58 (D.N.H. 2013).

[12] Plaintiffs failed to brief any substantive response to Alside's motion to dismiss Claim 6 (breach of implied warranty of fitness for a particular purpose) or Claim 15 (violation of the MMWA).  The Court finds Plaintiffs waived these claims.  *Espey*, 2014 WL 2818657, at *11.  In addition, Plaintiffs have clearly not alleged facts sufficient to state a claim of breach of implied warranty of fitness for a particular purpose.  *See Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327, 341 (D.N.H. 2012) (setting out the elements of a claim for breach of implied warranty of fitness for a particular purpose in New Hampshire); *Twin City Die Castings Co. v.*

(Footnote continued on next page.)

Plaintiffs argue that because of Alside's breaches, Plaintiffs suffered damages to their windows, inconvenience, and aggravation, and they incurred costs related to removing damaged windows and installing replacement windows.   Plaintiffs therefore assert that they are entitled to "reasonable damages in an amount to be proven at trial as to the implied warranty claims."   (Compl. at 41.)   Alside counters that the limited warranties applicable to Plaintiffs' IGUs validly limit Plaintiffs' remedies to repair or replacement, and even if remedies are not limited to repair or replacement, the limited warranties' separate provision excluding consequential and incidental damages is valid.[13]

Under the Uniform Commercial Code ("UCC"), transactions involving the sale of goods give rise to an implied warranty "that the goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind."   Minn. Stat. §§ 336.2-102, 336.2-314; N.H. Rev. Stat. §§ 382-A:2-102, 382-A:2-314.   The statute defines "merchantable" goods as those that meet various minimum standards, including that they "are fit for the ordinary purposes for which such goods are used."   Minn. Stat. § 336.2-314(2), N.H. Rev. Stat. § 382-A:2-314(2).   The implied warranty of merchantability may be excluded

_____

(Footnote continued.)

*Yamazen, Inc.*, No. 03-3069, 2005 WL 1593368, at *5 (D. Minn. July 6, 2006) (same, but applying Minnesota law).

[13] The warranties applicable to all of Plaintiffs' IGUs explicitly limit buyers to the exclusive remedies of repair or replacement of a defective window or component and disclaim any responsibility for shipping, delivery costs, or labor expenses incurred as part of the repair or replacement of defective IGUs.  (Compl. at 13-14.)  Whether Alside will cover the entire cost of repair or replacement varies based on the precise line of windows warranted, whether the owner is the original owner, and the age of the windows.  (*Id.* at 13-15.)  The warranties also state that Alside shall not be responsible for consequential or incidental damages of any kind.  (*Id.* at 14.)

or modified in accordance with Minn. Stat. § 336.2-316 and N.H. Rev. Stat. § 382-A:2-316.[14]

The UCC permits parties to limit remedies for breach of warranty.  Minn. Stat. § 336.2-316(4); N.H. Rev. Stat. § 382-A:2-316(5).  Parties may agree to "limit[] the buyer's remedies . . . to [the exclusive remedy of] repair and replacement of non-conforming goods or parts," but "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose," a buyer may pursue other remedies permitted under the UCC.  Minn. Stat. § 336.2-719(1), (2); N.H. Rev. Stat. § 382-A:2-719(1), (2).  Buyers' remedies under the UCC include damages based on the difference "between the value of the goods accepted and the value they would have had if they had been as warranted," Minn. Stat. § 336.2-714, N.H. Rev. Stat. § 382-A:2-714, as well as incidental and consequential damages, Minn. Stat. § 336.2-715, N.H. Rev. Stat. § 382-A:2-715.  In addition, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."  Minn. Stat. § 336.2-719(3); N.H. Rev. Stat. § 382-A:2-719(3).

---

[14] The Court briefly notes that Alside's limited warranties, as set out in the complaint, do not validly disclaim implied warranties.  The Alside warranties purport to exclude "all other warranties, express or implied," in the case of the Minnesota Plaintiffs, (Compl. at 13), and simply "all other warranties," in Cole's case, (*id.* at 14).  The warranties do not mention "merchantability," nor do they fall under any of the three statutorily-enumerated circumstances allowing for disclaimer of implied warranties despite a failure to mention merchantability.  Minn. Stat. § 336.2-316(2), (3); N.H. Rev. Stat. § 382-A:2-316(2), (3); *see also* U.C.C. § 2-316, cmt. 1 (Am. Law Inst. & Unif. Law Comm'n 1977) ("This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.'  It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty . . . .").

## A.    Relationship Between Limited Remedy and Exclusion of Consequential Damages

Alside asserts that under both Minnesota and New Hampshire law, even if the repair-or-replace limited remedy is invalid, the exclusion of consequential and incidental damages[15] is separately enforceable.

Alside relies on two Minnesota cases to support its argument about exclusion of consequential and incidental damages: *International Financial Services, Inc. v. Franz*, 534 N.W.2d 261 (Minn. 1995), and *Taylor Investment Corp. v. Weil*, 169 F. Supp. 2d 1046 (D. Minn. 2001).  In *Franz*, the court explained that "the better reasoned approach is to treat the repair or replacement remedy and a consequential damage exclusion as discrete and independent contractual provisions.  Accordingly, the consequential damage exclusion is valid unless it is unconscionable."  *Franz*, 534 N.W.2d at 269; *see Weil*, 169 F. Supp. 2d at 1058 (quoting *Franz*, 534 N.W.2d at 269).  However, both *Franz* and *Weil* addressed UCC transactions in which the parties were merchants of relatively equal bargaining power.  *Weil*, 169 F. Supp. 2d at 1058; *Franz*, 534 N.W.2d at 269.  This line of cases

> is not intended to establish that a consequential damage bar survives a
> failure of the limited repair remedy in consumer transactions that involve

---

[15] Under the UCC, incidental damages are defined to include "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses, or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach."  N.H. Rev. Stat § 382-A:2-715(1); Minn. Stat. § 336.2-715(1).  Consequential damages "include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty."  N.H. Rev. Stat. § 382-A:2-715(2); Minn. Stat. § 336.2-715(2).

relatively commonplace or uncomplicated products . . . .   [S]uch consumer transactions will continue to be governed by the principles enunciated in *Jacobs v. Rosemount Dodge-Winnegabo South*, 310 N.W.2d 71 (Minn. 1981), and *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn. 1977).

*Franz*, 534 N.W.2d at 269.

In *Jacobs*, consumers bought a defective motor home under a warranty limiting remedies to repair or replacement and separately excluding recovery of consequential damages.   The Minnesota Supreme Court held that notwithstanding the exclusion of consequential damages in the warranty, the remedies set out in UCC Chapter 336, including consequential damages, were available to the buyers because "[t]he limitations on remedies set out in the warranties in this case have operated to deprive [the buyers] of the substantial value of their bargain."   *Jacobs*, 310 N.W.2d at 75, 77-78; *see also Durfee*, 262 N.W.2d at 357 (permitting recovery of incidental damages in relation to a consumer transaction, despite a warranty clause excluding incidental damages, when the exclusive repair-and-replace remedy failed of its essential purpose).   Based on *Jacobs* and *Durfee*, the Court concludes that under Minnesota law, in a consumer transaction under the UCC, when a limited remedy fails of its essential purpose, a separate clause excluding consequential and/or incidental damages is also unenforceable even if it is not unconscionable.

The only New Hampshire case Alside cites to support its argument regarding the separate enforceability of a consequential damages exclusion involved a transaction between merchants.   *See Xerox Corp. v. Hawkes*, 475 A.2d 7, 10-12 (N.H. 1984). Therefore, without a more developed legal argument about the proper application of

New Hampshire law, the Court declines to hold that under New Hampshire law, an exclusion of consequential and/or incidental damages is enforceable unless unconscionable even if a repair-or-replace limited remedy fails of its essential purpose. The Court proceeds at the motion-to-dismiss stage as though New Hampshire law resembles Minnesota law on this question.  The parties are free to provide additional arguments and authority if necessary at a later stage of litigation.

Next, the Court considers whether the limited remedies in Alside's warranties fail of their essential purpose.

## B.    Failure of Essential Purpose

"An exclusive remedy fails of its essential purpose 'if circumstances arise to deprive the limiting clause of its meaning or one party of the substantial value of its bargain.'"  *Weil*, 169 F. Supp. 2d at 1059 (quoting *Valley Paving, Inc. v. Dexter & Chaney, Inc.*, No 00-361, 2000 WL 1182800, at *4 (Minn. Ct. App. Aug. 22, 2000)); *see BAE Sys. Info. & Elec. Sys. Integration, Inc. v. SpaceKey Components, Inc.*, No. 10-370, 2013 WL 149656, at *2 (D.N.H. Jan. 11, 2013) (quoting this passage from *Weil*).

The cases the parties have cited point to three separate ways that a limited repair-or-replace warranty might deprive the buyer of the substantial value of its bargain: (1) the seller is unwilling to repair or replace the defective item, or is unwilling to do so within a reasonable time;[16] (2) the seller is unable to successfully repair or replace the defective

---

[16] *E.g., Transp. Corp. of Am. v. Int'l Bus. Machs. Corp.*, 30 F.3d 953, 959 (8th Cir. 1994) (finding that the limited remedy did not fail of its essential purpose when the seller repaired the item sold after it failed); *see also Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1187, 1189

(Footnote continued on next page.)

item, or in other words, the seller has attempted repairs and they have not corrected the problem(s);[17] or (3) the limited remedy is insufficient because the foreseeable incidental and/or consequential damages greatly surpass the cost of the goods or the cost of the available remedy, such that even if the seller repairs or replaces the defective item, the buyer incurs proportionally large costs dealing with the defect.[18] As a corollary matter of

_____

(Footnote continued.)

(D. Minn. 2001) (noting that a repair-or-replace limited remedy may fail of its essential purpose when the seller "will not repair or replace the defective [goods]").

[17] As a general matter, under Minnesota law, "[a] repair or replace clause does not fail of its essential purpose so long as repairs are made each time a defect arises." *Transp. Corp.*, 30 F.3d at 959 (citing *Durfee*, 262 N.W.2d at 356). However, even if this is the case, if the repairs are unsuccessful, the limited remedy may fail of its essential purpose. For example, in *Durfee*, the seller of a car made multiple attempts to repair the car but they all failed. The trial court made an explicit finding that "the car could not or would not be placed in reasonably good operating condition." 262 N.W.2d at 356. The reviewing court found that this finding was sufficient to support a conclusion that the limited repair-or-replace warranty failed of its essential purpose. *Id.* at 356-57. *See also Christian*, 152 F. Supp. 2d at 1189 (noting that a repair-or-replace limited remedy may fail of its essential purpose when the seller "cannot . . . repair or replace the defective [goods]").

[18] Cases finding a limited remedy fails of its essential purpose due to insufficiency involve situations in which the damages to the buyer far exceed damage to the repaired or replaced product itself, such that there are unrecoverable consequential or incidental damages that, by virtue of their size, wholly deprive the buyer of the value of the bargain. Plaintiffs characterize these cases as finding the limited remedy failed of its essential purpose because of the latent character of the defect, as stated in *Garden State Food Distributors, Inc. v. Sperry Rand Corp., Sperry Univac Div.*, 512 F. Supp. 975, 978 (D.N.J. 1981). *But see Brown v. La.-Pac. Corp.*, 820 F.3d 339, 351-52 (8th Cir. 2016) (explaining that the majority rule is that latency of a defect alone does not mean that a limited remedy fails of its essential purpose). It is more accurate to characterize the relevant cases as turning on the fact that a product with a latent defect was incorporated into something else that cost much more to fix than merely the purchase price of the defective item. *See, e.g., Marvin Lumber & Cedar Co. v. Sapa Extrusions, Inc.*, 964 F. Supp. 2d 993, 1003 (D. Minn. 2013) (holding that a limited remedy clause failed of its essential purpose in part because "the purchase price amounted to only a small fraction of the overall repair cost when the product failed, which cost was foreseeable to the seller"); *see also BAE Sys.*, 2013 WL 149656, at *4 (stating that outside circumstances in which "latent defects that were only discovered after the defective product was either integrated into something else or was otherwise put to use in a way that rendered it non-returnable, courts have generally

(Footnote continued on next page.)

law, many of the cases note that the mere fact that a warranty does not cover all costs or damages to the buyer does not mean the limited remedy fails of its essential purpose. *E.g. Weil*, 169 F. Supp. 2d at 1059.

Alside is clearly willing to repair or replace defective IGUs under the terms of its limited warranties.  Plaintiffs also have not pled facts tending to show that there are foreseeable consequential or incidental damages that greatly outweigh the value of the limited remedy, such as might be the case if the IGUs were incorporated into a larger whole that could not be repaired without considerable expense not covered by the limited warranties.  However, accepting all facts in the complaint as true, Plaintiffs have a plausible argument that Alside is unable to successfully repair or replace the defective IGUs due to a design defect.  *See Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1189 (D. Minn. 2001) (declining to find that a limited remedy failed of its essential purpose when plaintiffs did not allege that all replacement products had the alleged defect or that the seller was unable to effectively replace the allegedly defective product); *Agristor Credit Corp. v. Schmidlin*, 601 F. Supp. 1307, 1314-15 (D. Or. 1985) (holding that because a "repair remedy fails where the manufacturer cannot cure substantial defects," if the claimant could prove a product was inherently defective, then the limited

---

(Footnote continued.)

determined that return/refund remedies do not fail of their essential purpose"); *see also Holbrook v. La.-Pac. Corp.*, No. 12-484, 2015 WL 1291534, at *6 (N.D. Ohio Mar. 23, 2015) (similar); *Viking Yacht Co. v. Composites One LLC*, No. 05-538, 2007 WL 2746713, at *6 (D.N.J. Sept. 18, 2007) (similar).

warranty failed of its essential purpose) (citing *Soo Line R.R. Co. v. Fruehauf Corp.*, 547 F.2d 1365 (8th Cir. 1977)).

Because the facts in the complaint, if true, could mean that Alside is unable to successfully repair inherently defective IGUs, and the facts pled could also mean that any replacement IGU is similarly defective, the Court finds there is a fact issue as to whether Alside's repair-or-replace limited remedy fails of its essential purpose. *Cf. Carey v. Chaparral Boats, Inc.*, 514 F. Supp. 2d 1152, 1154-55 (D. Minn. 2007) (declining to hold that a repair-and-replace clause failed of its essential purpose when "[t]he undisputed record [was] that the repairs were successful"). Therefore, the Court will not dismiss Plaintiffs' implied warranty claims, and Plaintiffs may seek remedies available under the UCC including consequential and incidental damages and any other applicable monetary damages.[19]

### C.    New Hampshire Statutes of Limitations and Repose

Cole purchased her set of Alside replacement windows in January 2002 and her first IGU failure occurred in 2004. Cole submitted warranty claims to Alside in February 2004, March 2007, March 2008, March 2009, July 2010, and March 2012 (the last of which was later withdrawn). Cole wrote a letter to Alside complaining about the quality of her windows and the accompanying warranty in June 2012. The Plaintiffs initiated this lawsuit in May 2015. Alside contends that based on the facts pled in the complaint,

---

[19] Because the Court finds that if Plaintiffs are able to prove their factual allegations, Alside's limited remedies may fail of their essential purpose, the Court need not consider whether the exclusion of consequential and incidental damages is unconscionable. *See Jacobs*, 310 N.W.2d at 75, 77-78.

all of Cole's claims are untimely under New Hampshire's statutes of limitations and repose.

New Hampshire statute requires "all actions to recover damages for injury to property, injury to the person, wrongful death or economic loss arising out of any deficiency in the creation of an improvement to real property . . . be brought within 8 years from the date of substantial completion of the improvement."  N.H. Rev. Stat. § 508:4-b(I).  Even assuming this statute of repose generally applies to the types of warranty claims at issue here, the eight-year statute of repose is "extend[ed] to equal the longer period of warranty" when "an improvement to real property is expressly warranted or guaranteed in writing for a period longer than 8 years."  § 508:4-b(III).  Because the limited warranties from Alside that Plaintiffs rely on extend for periods of at least twenty years, and in some cases longer, (Compl. at 13-14), New Hampshire's statute of repose does not bar Cole's claims.

The UCC as adopted in New Hampshire requires that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."  N.H. Rev. Stat. § 382-A:2-725(1).

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

§ 382-A:2-725(2).  Here, Cole's warranty "explicitly extends to future performance of the goods."  Thus, even if damages for some of Cole's early IGU failures may be barred by the statute of limitations, Cole alleges that some of her IGUs failed within the four-year

period directly preceding the filing of this lawsuit.   Therefore, the Court declines to dismiss Cole's implied warranty claims based on the UCC's four-year statute of limitations.  The parties may submit arguments at a later stage regarding precisely which damages the statute of limitations, as specified in § 382-A:2-725(2), bars Cole from seeking.

## IV.   FRAUD-RELATED CLAIMS

### A.   Common Law Fraud/Misrepresentation

In Claim 9, Plaintiffs assert that Alside committed "fraud, misrepresentation, and concealment."  (Compl. at 37.)

In Minnesota, a plaintiff must prove the following to succeed on a claim for fraudulent misrepresentation:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (quoting *Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007)).  "To establish fraud [in New Hampshire], a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it.   In addition, a plaintiff must demonstrate justifiable reliance." *Snierson v. Scruton*, 761 A.2d 1046, 1049 (N.H. 2000) (internal citations omitted).  To establish reliance, which is an "essential element of common law fraud,"

*Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 491 (8th Cir. 2004), "a plaintiff must show that he believed the alleged misrepresentation to be true. The listener 'may rely on the representation so long as it is not known by the listener to be false and is not obviously false,'" *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 594 (D. Minn. 2014) (quoting *Hoyt Props.*, 736 N.W.2d at 321).

Fraud must be pled with particularity under Fed. R. Civ. P. 9(b).  The Eighth Circuit interprets Rule 9(b) "in harmony with the principles of notice pleading," and to satisfy those principles, the complaint must allege "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)).  In other words, the complaint must allege the "who, what, where, when, and how," of the alleged fraud, as opposed to merely "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (first quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006), then quoting *Schaller Tel. Co.*, 298 F.3d at 746); *see also Trooien*, 608 F.3d at 1028 (applying Rule 9(b) to a Minnesota fraudulent misrepresentation claim); *Snierson*, 761 A.2d at 1049 (explaining that under New Hampshire law, "[a] plaintiff cannot allege fraud in general terms, but must specifically allege the essential details of the fraud and the facts of the defendants' fraudulent conduct").

Plaintiffs allege that Alside "recklessly, willfully, and intentionally misrepresent[ed] or [did] not convey[] to the purchasers of [the IGUs] material information known by Alside regarding their insufficient design, insufficient specifications, and poor durability that would ultimately lead to expected premature or excessive seal failures, condensation between panes, and/or corrosion between panes." (Compl. at 37.)  Plaintiffs then allege that the "purchasers" of the IGUs relied on these alleged misrepresentations and lack of representations, and as a result of the purchasers' reliance, Plaintiffs were harmed.  (*Id.* at 37-38.)

Citing Restatement (Second) of Torts § 533, *Tessier v. Rockefeller*, 33 A.3d 1118, 1125 (N.H. 2011), and *Vikse v. Flaby*, 316 N.W.2d 276, 284 (Minn. 1982), Plaintiffs argue that a plaintiff need not directly see or hear a defendant's misrepresentation or fraudulent omission in order for a fraud claim to lie, and that the fraudulent information may be communicated through a third party.  The cited rule from the Restatement, *Tessier*, and *Vikse* requires that a seller making a misrepresentation knew or intended that it would be communicated to the plaintiff **and** that such communication actually happened, resulting in the plaintiffs' reliance on the misrepresentation.  *See* Restatement (Second) of Torts § 533 ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another **who acts in justifiable reliance upon it** if the misrepresentation, although not made directly to the other, is made to a third person and the maker **intends or has reason to expect that its terms will be repeated or its substance communicated to the other**, and that it will influence his [or her] conduct in the transaction or type of transaction involved." (emphasis added); *Tessier*, 33 A.3d at

- 22 -

1125-26 (allowing a fraudulent misrepresentation claim based on a misrepresentation communicated through a third party to survive a motion to dismiss when the plaintiff pled that the alleged misrepresentation as communicated to her and she relied on it); *Vikse*, 316 N.W.3d at 284 (similar); *see also* Restatement (Second) of Torts § 537, cmt. a ("If the recipient [of a fraudulent misrepresentation] does not in fact rely on the misrepresentation, the fact that he [or she] takes some action that would be consistent with his [or her] reliance on it and as a result suffers pecuniary loss, does not impose any liability upon the maker.").

Even if Alside did make misrepresentations of fact and did have such knowledge or intent that these misrepresentations would be communicated to end-users of its windows, Plaintiffs have not alleged that any of Alside's alleged misrepresentations were ever communicated to the Plaintiffs. Plaintiffs also do not allege that they detrimentally relied on any of Alside's misrepresentations. The Minnesota Plaintiffs do not allege that they even knew that Alside windows were installed in their homes at the time they purchased them, let alone that they relied on any of Alside's alleged misrepresentations in their decision-making process. And while Cole purchased her Alside windows from a third-party seller, Cole does not allege that any of Alside's misrepresentations or fraudulent omissions were communicated to her before purchasing her windows. Therefore, even under a generous reading of the applicable pleading standard, Plaintiffs have failed to plead a necessary element of common law fraud – reliance.

### B.     Consumer Fraud Claims

In Claims 10-13, Plaintiffs assert statutory consumer fraud claims pursuant to Minn. Stat. § 325D.13 (Minnesota Unlawful Trade Practices Act, or "MUTPA"[20]), Minn. Stat. § 325D.44 (Minnesota Deceptive Trade Practices Act, or "MDTPA"[21]), and N.H. Rev. Stat. § 358-A:2 (New Hampshire Consumer Protection Act, or "NHCPA"[22]).[23]  To support these claims, Plaintiffs allege that in connection with Alside's marketing and sale of IGUs, Alside (1) knowingly misrepresented the particular standard, quality, or grade of the IGUs; (2) knowingly represented that Alside and the Alside Two-Pane IGUs have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, status,

---

[20] Minnesota's Unlawful Trade Practices Act, Minn. Stat. § 325D.13, commands that "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."  Section 325D.15 provides that "[a]ny person damaged" by a violation of § 325D.13 "shall be entitled to sue for . . . the amount of the actual damages."

[21] Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 325D.44, defines "deceptive trade practices" to include a number of types of conduct, including the three types of conduct Plaintiffs allege in Claim 11.  Section 325D.45 permits "[a] person likely to be damaged by a deceptive trade practice" to sue for injunctive relief and entitles the prevailing party in such a lawsuit to costs and attorney fees.

[22] New Hampshire's Consumer Protection Act, N.H. Rev. Stat. § 358-A:2, defines "unfair or deceptive act[s] or practice[s]" to include a number of types of conduct, including the conduct Plaintiff alleges in Claim 12.  Section 358-A:10 allows for private actions for "actual damages or $1,000, whichever is greater," and allows for increased damages (up to treble damage) for violations that are "willful or knowing."

The First Circuit held that one provision in the NHCPA, N.H. Rev. Stat. § 358-A:2(XIII), is preempted in part by federal law; that holding does not affect the claims at issue here.  *See SPGGC, LLC v. Ayotte*, 488 F.3d 525, 536 (1st Cir. 2007).

[23] The complaint also includes a claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.02.  Plaintiffs waived the Ohio consumer fraud claim by failing to brief it.  *Espey*, 2014 WL 2818657, at *11.

affiliation, or connection that they do not have; (3) caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods; and (4) caused a likelihood of confusion or of misunderstanding as to Alside's affiliation, connection, or association with, or certification by, another. As for the content of these alleged misrepresentations and confusing sales statements, Plaintiffs provide a number of quotes from Alside's sales literature which Plaintiffs assert, upon information and belief, "has been disseminated through the lower 48 United States by means of Alside's website, as well as in paper form through its sales force, distributors and installers" including through the use of promotional literature sent in the mail and door-to-door salespeople. (Compl. at 10-12.) Plaintiffs allege that as a result of these willful and/or knowing misrepresentations, all foreseeable purchasers and end-users of the IGUs were damaged.

By enacting the statutes at issue, the Minnesota and New Hampshire state legislatures intended to create causes of action that differ significantly from the narrow elements of common law fraud. *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 4 (Minn. 2001) (interpreting MUPTA and two other related Minnesota statutes governing consumer protection); *see Hair Excitement, Inc. v. L'Oreal U.S.A, Inc.*, 965 A.2d 1032, 1037-38 (N.H. 2009). While claims under these statutes must still be pled with particularity under Rule 9(b), the statutes allow for claims by any person who is injured (under the MUPTA and NHCPA) or is likely to be injured (under the MDTPA) by the offending conduct. Minn. Stat. § 325D.45; N.H. Rev. Stat. § 358-A:10(I). Thus, these statutory claims are unlike common law fraudulent misrepresentation, which requires a showing that the plaintiff detrimentally relied on the fraudulent statement or

omission.  The Minnesota Supreme Court clarified, in *Group Health Plan*, that a plaintiff ultimately must prove "causation," or a "legal nexus" between the offending conduct and the plaintiff's damages, but that personal reliance by the plaintiff is not the only way to demonstrate the requisite legal nexus.  *Grp. Health Plan*, 621 N.W.2d at 14; *see also In re St. Jude Med., Inc.*, 522 F.3d 836, 839-40 (8th Cir. 2008) (discussing the holding in *Group Health Plan*).  To the extent Alside argues that Plaintiffs must have personally perceived and relied on Alside's alleged misrepresentations in order to state a claim under these statutes, the Court rejects this argument.  *See Grp. Health Plan*, 621 N.W.2d at 14.

According to *Group Health Plan*, at the pleading stage "the plaintiff need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby."  *Grp. Health Plan*, 621 N.W.2d at 12.  In other words, the question before the Court is whether Plaintiffs have pled with sufficient particularity[24] (1) that Alside "engaged in conduct prohibited by [MUPTA, MDTPA and NHCPA]"; (2) that Plaintiffs were damaged (or in the case of MDTPA, are likely to be damaged); and (3) that Alside's statutory violation(s) caused (or in the case of MDTPA, will cause) Plaintiffs' damages. [25]  *See id.* at 12-14; *see also Ansari v. NCS Pearson, Inc.*, No. 08-

---

[24] In cases brought in federal court, the heightened Rule 9(b) pleading standard applies to common law fraud as well as to "statutory fraud claims made under [state] law where the gravamen of the complaint is fraud."  *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006); *see E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012).

[25] At this stage in the litigation, the Court assumes that these same three basic elements are sufficient to state a claim under NHCPA, based on the similarity in language between the NHCPA and the MUTPA.  *Compare* Minn. Stat. § 325D.15 ("Any person damaged . . . by

(Footnote continued on next page.)

- 26 -

5351, 2009 WL 2337137, at *9-10 (D. Minn. July 23, 2009) (explaining that causation, rather than reliance, is a necessary element in order to state a claim under related Minnesota statutes); *Lawrence v. Philip Morris USA, Inc.*, 53 A.3d 525, (N.H. 2012) (signaling that causation is a necessary element of a successful NHCPA claim).

First the Court addresses the MDTPA claim.  The Court finds the complaint to be so wholly lacking in allegations supporting a claim under MDTPA that while the parties did not address the deficiency with specificity in their briefing, the Court will dismiss this claim.  Under the MDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it," and the "prevailing party" can collect costs.  Minn. Stat. § 325D.45 subd. 1, 2.  The statute does not provide for monetary damages; "the sole statutory remedy for [Plaintiffs' MDTPA claim] is injunctive relief." *Bobcat Co.*, 175 F. Supp. 3d at 1140 (quoting *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070 (D. Minn. 2013)).  Nowhere in the complaint do Plaintiffs request injunctive relief.  The complaint merely generally requests "reasonable damages in an amount to be proven at trial as to the unlawful, unfair, and deceptive trade practices claims," (Compl. at 43), relief that is not available under the MDTPA.  Additionally, while the statute is meant to cover a broad range of future direct and indirect harms, the complaint simply

_____

(Footnote continued.)

reason of a violation of [the MUPTA] shall be entitled to sue . . . for the amount of actual damages . . . ."), *with* N.H. Rev. Stat. § 358-A:10(I) ("Any person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages . . . .").

lacks any allegation that Plaintiffs are "likely to be damaged by [Alside's] deceptive trade practice[s]" in the future, as the statute requires.  Minn. Stat. § 325D.45.

Turning to the MUTPA and NHCPA claims, the Court considers whether the complaint alleges with sufficient particularity the "who, what, when, where and how" of Alside's statutory violations.  *Drobnak*, 561 F.3d at 783 (quoting *United States ex rel. Joshi*, 441 F.3d at 556).

First, the "what."  The complaint lists a number of statements made in Alside's promotional materials.  While some of the listed statements may be non-actionable subjective assertions of quality, *see Bernstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1031 (D. Minn. 2009) (defining non-actionable "puffery"), the parties agree that at least some of the statements from promotional materials are measurable statements of fact.  Alside argues that even if the complaint alleges some actionable factual statements, Plaintiffs have wholesale failed to allege that any of the statements in the sales literature are misrepresentations.

Construing the complaint in the light most favorable to the non-movant, the Court concludes that Plaintiffs have alleged that the sales promotion statements are misrepresentations.  For one, there are factual allegations that, if true, suggest that most if not all of the sales statements are confusing, are outright misrepresentations of fact, or indicate a fraudulent omission.  For example, Plaintiffs allege because of insufficient testing, Alside's IGUs are defective to the point that they do not meet accepted industry standards, while many of the sales statements posit that Alside's products meet or exceed various industry standards and are thoroughly tested.  Plaintiffs also allege defects in the

windows that require replacement of the windows, while one of Alside's alleged sales statements is that the windows "require minimal maintenance."  (Compl. at 11.)  In addition, while the complaint does not specifically allege that each and every paragraph listing Alside's sales statements is fraudulent, the section in the complaint listing the sales statements begins with the heading "Alside's Sales and Promotional Misrepresentations." (*Id.* at 10.)  While an ideal complaint might be more clearly organized and explicit, Alside seeks dismissal based on a technicality when the purpose of the heightened Rule 9(b) pleading standard is satisfied, as Alside has notice of the exact sales statements that Plaintiffs argue are statutory violations.  *See United States ex rel. Scharber v. Golden Gate Nat'l Senior Care LLC*, 135 F. Supp. 3d 944, 957 (D. Minn. 2015) ("One of the primary purposes of [Rule 9(b)] is to ensure that a defendant can adequately respond and prepare a defense to charges of fraud.").

Second, the "where."  Plaintiffs allege that Alside made misrepresentations and confusing statements throughout the continental United States on the internet, in person, and over the mail.  An allegation that information is widely available on a website can be sufficient under Rule 9(b) in terms of where a misrepresentation took place.  *E.g. Bobcat Co.*, 175 F. Supp. 3d at 1145-46.  But other than the allegation of communications on a website, the complaint lacks any specificity regarding location, including where Alside sent mailings and where any in-person communications took place.  Thus, Plaintiffs do not plead where the alleged misrepresentations took place with particularity.

Third, the "when."  Plaintiffs allege that Alside made misrepresentations and confusing statements over the course of many years.  However, "over the course of many

years" is not a particular allegation of date or timing, and Plaintiffs have provide no other facts regarding when mailings went out  or when in-person exchanges between Alside and the windows' original purchasers occurred.  Thus, Plaintiffs have not pled the timing of the alleged misrepresentations with particularity.

Fourth, the "who."  The complaint alleges that Alside made misrepresentations in its sales literature to "purchasers" of the defective IGUs.  Plaintiffs do not provide any details about the original purchasers of their Alside windows – presumably the contractors who built the Minnesota homes and the third-party seller who sold replacement windows to Cole.  To the extent Plaintiffs rely on in-person communications between Alside personnel and "purchasers," there are no allegations pinpointing who those Alside personnel are.  Thus, the complaint fails to plead who was involved in the alleged violations with sufficient particularity.

The failure to plead with particularity facts showing that Alside engaged in conduct that violated the statutes is linked to another problem with the pleading – the failure to plead any facts which, if true, would prove a causal nexus between the misrepresentation and Plaintiffs' damages.  *See Grp. Health Plan*, 621 N.W.2d at 12, 14. The complaint merely alleges that "purchasers" relied on Alside's offending statements, yet the facts in the complaint do not support this conclusory statement.  Because there are no factual allegations about who heard or saw and relied on Alside's sales statements and when, it is not clear how the existence of the alleged misrepresentations caused Plaintiffs' damages.  Because Plaintiffs have failed to plead any facts supporting the causal relationship between the alleged statutory violations and Plaintiffs' damages, the Court

will dismiss Plaintiffs' claims under these statutes.  Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 678 (finding that a pleading offering "a formulaic recitation of the elements of a cause of action will not do" (quoting *Twombly*, 550 U.S. at 555)).

## V.   UNJUST ENRICHMENT

Plaintiffs allege in Claim 14 that Alside was unjustly enriched because it "received benefits at the expense of the Plaintiffs and other similarly situated, namely profits from the sale of defective windows and from warranty labor and service charges assessed against window owners," and that "it would be unjust for Alside to retain [these] benefits."  (Compl. at 40.)

In New Hampshire, "[a] plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit." *Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc.*, 761 A.2d 401, 406 (N.H. 2000).  "Unjust enrichment may exist when an individual receives a benefit as a result of his [or her] wrongful acts, or when he innocently receives a benefit and passively accepts it." *Petrie-Clemons v. Butterfield*, 441 A.2d 1167, 1172 (N.H. 1982). "[T]he basis for any recovery plaintiff may be entitled to focuses on 'the value of what was actually received by the defendant,' not what the cost to plaintiff was." *Schell v. Kent*, No. 06-425, 2009 WL 948657, at *2 (D.N.H. Apr. 6, 2009) (quoting *Martin v. Phillips*, 440 A.2d 1124, 1126 (N.H. 1982)).

In Minnesota, to state a claim for unjust enrichment, "the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." *ServiceMaster of St. Cloud v.*

*GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (quoting *Klass v. Twin City Fed. Sav. & Loan Ass'n*, 190 N.W.2d 493, 494-95 (Minn. 1971)).  Additionally, "unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981).

The complaint lacks allegations of an essential factual element of an unjust enrichment claim: that Alside received a benefit that can be attributed to Plaintiffs.[26]  The complaint alleges that Alside is in the business of manufacturing and selling windows for new construction as well as replacement in existing construction throughout the United States.  (Compl. at 4, 6-7.)  Additionally the complaint alleges that the Minnesota Plaintiffs purchased new homes built between 2006 and 2008 that included already-installed Alside windows, which were purchased "by the developer, general contractor,

---

[26] Privity is not a requirement in order to state an unjust enrichment claim. *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 149 n.4 (Minn. 2001) ("[A] quasi contract does not require a promise or privity between the parties."); *Knapp v. Hobbs*, 50 N.H. 476 (1871).  To the extent Alside argues that a plaintiff must **directly** confer a benefit on a defendant in order to claim unjust enrichment under Minnesota or New Hampshire law, the Court finds Alside's argument unconvincing.  *See Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 n.4 (D. Minn. 2014) (discussing the difficulty in determining whether a state has adopted the "direct-benefit" requirement for unjust enrichment and concluding that Minnesota law is at best ambiguous).  While there are stray cases from the Minnesota Court of Appeals stating that the benefit must be "conferred by the plaintiff," *e.g. Interboro Packaging Corp. v. City of Minneapolis*, No. A09-0189, 2009 WL 2928755, at *8 (Minn. Ct. App. Sept. 15, 2009), the standard formulation of the rule from the Minnesota Supreme Court does not include this language, *e.g. Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012); *Servicemaster*, 544 N.W.2d at 306.  Additionally, even if a benefit must be conferred "by the plaintiff," Alside provides no authority from the Minnesota Supreme Court imposing the additional requirement that this conferral be **direct**.  Similarly, Alside provides no authority definitively showing New Hampshire has adopted the direct-benefit requirement.

and/or some subcontractor that built [their homes]," (*id.* at 15; *see also id.* at 19-21), and that Cole purchased a set of Alside replacement windows in 2002, with no allegation that Cole purchased the windows from Alside, (*id.* at 17).  Thus, without a more detailed allegation of the benefit conferred on Alside to Plaintiffs' detriment, the only reasonable inference is that Alside first sold the windows at issue to third parties, the third parties paid Alside for those windows, and then Plaintiffs purchased the windows from the third parties.  Plaintiffs have not shown how any money they paid for their windows indirectly ended up in Alside's hands in the form of profits, since the facts pled imply that Alside would have been paid for the windows before and unrelated to Plaintiffs' purchase of the windows from third parties.  It is not the indirect nature of the transactions that causes Plaintiffs' claim to fail as a matter of law, but rather, the fact that there is not even an allegation of an indirect conferral of a benefit on Alside from the Plaintiffs.

As for Plaintiffs' claim that Alside received benefits at Plaintiffs' expense in the form of "warranty labor and service charges," the allegations as pled in the complaint either contradict this assertion or provide no factual support to substantiate it.  Plaintiffs allege that when they received replacement IGUs from Alside, they either performed the necessary installation work themselves or paid contractors to do that work.  (Compl. at 16-22.)  Thus, although the complaint later references "warranty labor," there is no corresponding factual allegation that Plaintiffs ever paid Alside for labor under the warranty.  Similarly, the only mention of "service charges" in the complaint is in the claim for relief; there is no factual allegation that Plaintiffs ever paid service charges that directly or indirectly went to Alside.  "To the extent [Plaintiffs] did confer a benefit on

[Alside] . . . [the complaint] should be amended accordingly and supplemented with facts to support this allegation." *Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *11 (D.N.H. Apr. 7, 2011).

For all of the reasons discussed above, the Court will dismiss thirteen of Plaintiffs' claims for deficient pleading.  Accepting all factual allegations in the complaint as true, and giving the Plaintiffs the benefit of all plausible inferences based on the complaint, the Court finds Plaintiffs' allegations sufficient to state a claim for breach of the implied warranty of merchantability and breach of an implied warranty based on course of dealing/usage of trade.  Plaintiffs may request leave to amend the pleading and at that time, Plaintiffs are free to reallege any claim dismissed without prejudice.[27]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Alside's Motion for Judgment on the Pleadings [Docket No. 47] is **GRANTED in part** and **DENIED in part**, as follows:

1.      The motion is **GRANTED** in all respects as to Defendant Alside, Inc.  All claims against Defendant Alside, Inc. are **DISMISSED with prejudice**.

2.      As to Defendants Associated Materials, LLC and Associated Materials, Inc., the motion is **GRANTED** as to Claims 1 (Negligent Product Design), 2 (Negligent

---

[27] The Court will dismiss Plaintiffs' state-law consumer fraud and unjust enrichment claims without prejudice, given Plaintiffs' counsel's request to do so at hearing.  The Court finds that while the pleading fails to allege sufficient facts to state these claims, it is not clear at this time that Plaintiffs would necessarily be unable as a matter of law to state these claims in the future.

Product Manufacture), 3 (Strict Product Liability – Product Design), 4 (Strict Product Liability – Product Manufacture), 6 (Breach of Implied Warranty of Fitness for a Particular Purpose), 8 (Negligent Misrepresentation), 9 (Fraud, Misrepresentation, and Concealment), and 15 (Violation of the Magnuson-Moss Warranty Act), as alleged in Plaintiffs' Second Amended Complaint [Docket No. 23].  These claims are **DISMISSED with prejudice**.

3.      As to Defendants Associated Materials, LLC and Associated Materials, Inc., the motion is **GRANTED** as to Claims 10 (Unlawful Trade Practices pursuant to Minn. Stat. § 325D.13), 11 (Deceptive Trade Practices pursuant to Minn. Stat. § 325D.44), 12 (Unfair or Deceptive Trade Practices pursuant to N.H. Rev. Stat. § 358-A:2), 13 (Unfair or Deceptive Trade Practices pursuant to Ohio Rev. Code § 1345.02), and 14 (Unjust Enrichment) as alleged in Plaintiffs' Second Amended Complaint [Docket No. 23].  These claims are **DISMISSED without prejudice**.

4.      The motion is **DENIED** in all other respects.


DATED:  March 29, 2017                           _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                JOHN R. TUNHEIM
                                                                       Chief Judge
                                                           United States District Court